STATE HIGHWAY COMMISSIONER *v.* SIMMONS.

SAME *v.* LEVIN.

SAME *v.* MUIR.

SAME *v.* LOUGHRIN.

SAME *v.* CARNEGIE.

1. DEEDS—QUITCLAIM DEEDS—INTEREST CONVEYED.
   A quitclaim deed, absent clear proof to the contrary, transfers any and all interest in the lands that the grantor may have, whatever its nature.

2. SAME—QUITCLAIM DEED—WARRANTY DEED.
   A warranty deed by the same grantor to the same grantee to whom a quitclaim deed had been given theretofore conveyed nothing, since the entire title of the grantor had been granted by the earlier deed.

3. TRUSTS—TITLE—QUITCLAIM DEED.
   A corporate trustee has power to accept a quitclaim deed to property it is to hold as mortgagee (CL 1948, § 487.204).

4. STATUTES—CONSTRUCTION.
   Litigants cannot bind the Supreme Court by their interpretation of a statute, however wrong or however much their interpretation, if the Court is persuaded to follow it, might help them to lose their case.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 16 Am Jur, Deeds § 331.
[3] 54 Am Jur, Trusts § 391.
[4] 50 Am Jur, Statutes § 219.
[5, 6] 51 Am Jur, Taxation § 1082.
[7] 51 Am Jur, Taxation § 1074.
[8] 51 Am Jur, Taxation § 1060.
[9] 44 Am Jur, Quieting Title § 65.
[10] 51 Am Jur, Taxation § 1140.
[11] 51 Am Jur, Taxation § 1152.
[12] 44 Am Jur, Quieting Title § 98.

5. TAXATION—TAX SALE—STATE LAND OFFICE BOARD—NOTICE OF OWNERSHIP BY STATE.

The term "discover," as used in statute providing that if the State land office board shall discover, before execution and delivery of a deed or execution of a land contract, apparent title to which vested in the State by virtue of a tax sale, that the State or governmental subdivision thereof owned a parcel or owned an interest therein prior to the apparent vesting of title by the tax sale, includes constructive notice by recording (CL 1948, § 211.371).

6. STATES—TAXATION—NOTICE BY RECORDING—STATUTES.

The statute to protect the public interest in land, acquired other than through taxation is construed as providing that the State land office board discovered such an interest when another State agency records its interest by recording its deed (CL 1948, § 211.371).

7. TAXATION—TITLE OF STATE.

Title to land sold to the State under a tax sale does not vest in the State until the auditor general has deeded the land to the State after the expiration of the period of redemption.

8. SAME—TAX SALES—DEEDS—PRIOR CONVEYANCE TO STATE AGENCY —STATUTES.

Deeds from State land office board to purchasers of land conveyed no title to the grantees, where they were void by reason of fact that deeds to such parcels to the State highway commissioner were recorded before title had been vested in the State by reason of a tax sale and the board was required to withhold such lands from public sale (CL 1948, § 211.371).

9. QUIETING TITLE—LACHES—TITLE.

Laches cannot create title where none existed.

10. SAME— TITLE — IMPROVEMENTS — TAXATION — TIME — LACHES — EQUITY.

Parties who acquired no interest in land when they attempted to purchase it from the State land office board cannot acquire it by making improvements, paying taxes or the expiration of time, such equities not being a substitute for title acquired according to law (CL 1948, § 211.371).

11. SAME—REMAND—DAMAGES.

Further proceedings are permitted in suit by State highway commissioner to quiet title to land so as to permit determination of question of damages, where, after defendants had purchased land from the State land office board, they had made improve-

ments, paid taxes and assessments and paid the purchase price, it has then been held no title was transferred.

12. COSTS—CONSTRUCTION OF STATUTE.

No costs are allowed in State highway commissioner's suit to quiet title involving the construction of a statute to protect the public's interest in land sold for taxes, not hitherto construed (CL 1948, § 211.371).

Appeal from Wayne; Culehan (Miles N.), J. Submitted April 15, 1958. (Docket Nos. 60–68, Calendar Nos. 47,341–47,349.) Decided September 9, 1958. Rehearing denied October 13, 1958.

Bill by Charles M. Ziegler, State Highway Commissioner, against Hugh F. Simmons and others to quiet title on land sold on State scavenger sale. Similar actions against Morris Levin, Teresa H. Muir, Archibald W. Loughrin, Steve Carnegie, William Carnegie and various others in each action. Cases heard together. Bills dismissed. Plaintiff appeals. Reversed and remanded.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Ernest O. Zirkalos* and *Daniel J. O'Hara,* Assistants Attorney General, for plaintiff.

*Meyer R. Rubin,* for defendants Simmons, Levin, Muir and Loughrin.

*Meyer R. Rubin (Daniel Hodgman,* of counsel), for defendants Carnegie.

VOELKER, J. Dates are important in this case and there is no lack of them. Prior to June 29, 1940, William G. Gilmore and wife were the owners of all of the lands involved in the various consolidated causes herein, subject to a trust mortgage dated June 25, 1926, and recorded July 2, 1926. The lands ad-

joined Telegraph Road (US-24) in Dearborn township and were unimproved.

On June 29, 1940, Gilmore and his wife executed a quitclaim deed for valid consideration to the corporate trustee, Union Guardian Trust Company, which deed was recorded July 1, 1940. The Detroit Trust Company became a successor in interest.

On August 7, 1940, Gilmore and wife executed a warranty deed conveying the same lands to the then State highway commissioner of the State of Michigan in exchange for $21,200. Said deed was not recorded until April 26, 1946.

The lands were placed upon the tax roll of Dearborn township for the year 1940, wherein the corporate trustee under the trust mortgage was shown as "owner or occupant."

The taxes on said lands for the year 1940 and subsequent years not being paid, tax foreclosure proceedings followed which culminated in their being bid off to the State on May 4, 1943. The next occurrence concerning the lands was a quitclaim deed by Gilmore and wife to the State highway department, dated January 8, 1944. On January 18, 1944, the Detroit Trust Company for valid consideration also gave the State highway department a quitclaim deed to the lands. These 2 quitclaim deeds were recorded by the highway department on February 16, 1944. (It is important and in fact crucial to note that these 2 deeds were received and recorded *within* the redemption period following the noted tax sale of May 4, 1943.)

On July 3, 1944, no redemption having been made, the auditor general deeded the lands to the State of Michigan, and said deed was recorded August 17, 1944.

The State land office board (hereafter for brevity sometimes referred to as land board) on February 19, 1945, sold all of the lands involved in each of

the causes herein and on April 5, 1945, issued quit-claim deeds to the purchasers of the various parcels. Since that date some of the lands have been resold to other purchasers.

On September 17, 1945, by letter the land board notified the original purchasers of the lands involved (all of whom are defendants and appellees herein) that the highway department had submitted to it photostatic copies of recorded deeds as evidence that the said department had acquired title to the lands prior to the date title had vested in the State, and that under such circumstances the said purchasers did not have a marketable title. The letters requested surrender of the quitclaim deeds given by the land board if not recorded, or reconveyance to it in case of recorded deeds. Tender of the purchase money was also made.

The defendants and appellees having been unwilling to return for cancellation the deeds which they had received from the land board and to accept repayment of the amounts paid therefore, the appellants brought this action to quiet title.

After hearing the trial court dismissed the bill of complaint and decreed that the defendants had a fee simple interest in the lands in question and that the noted deeds from the Detroit Trust Company and William G. Gilmore and wife to appellants were null and void as against the defendants and their assigns. This appeal has resulted.

The appellants offer 2 independent arguments concerning the validity of their claimed interests in the lands in question. These arguments will be discussed in the order presented.

Plaintiffs argue first that the quitclaim deed (June 29, 1940) by Gilmore to the mortgagee Union Guardian Trust Company (succeeded in interest by the Detroit Trust Company) was only a security device and did not convey absolute title to the lands. They argue

further, that when the highway department obtained a warranty deed from Gilmore (August 7, 1940) it therefore obtained an interest in the land, which was later perfected by the noted quitclaim deed from the Detroit Trust Company (January 18, 1944).

This argument is without merit. It is settled law in Michigan that a quitclaim deed, absent clear proof to the contrary, transfers any and all interest in the lands that the grantor may have, whatever its nature. See *Kitchell* v. *Mudgett,* 37 Mich 81; *Roddy* v. *Roddy,* 342 Mich 66; CL 1948, § 565.3 (Stat Ann 1953 Rev § 26.522). No adequate proof to the contrary was made here. Therefore the chancellor was correct in holding that the warranty deed transferred no interest in the lands, for after Gilmore had executed the prior quitclaim deed he simply had nothing left to deed to the State highway department.

The appellants further argue in this connection that it was *ultra vires* for the corporate trustee to accept title to the land, thus making the quitclaim deed to the mortgagee void and consequently validating the warranty deed to the State highway commissioner. However CL 1948, § 487.204 (Stat Ann 1957 Rev § 23.1014) plainly gives the corporate trustee the power to accept such land titles, thus negating appellants' claim of *ultra vires.*

Appellants' second main argument is based upon the land board's claimed lack of authority to sell the property in question. They fail to tell us precisely why that agency lacked such authority and we modesty allow that we have dredged that on our own. We find that a legal basis for such lack of authority may be spelled out in a rather new statute not yet interpreted on our point (CL 1948, § 211.371 [Stat Ann 1950 Rev § 7.965(1)]). Notwithstanding appellants' studied disregard of this possible saving statute in their argument, and indeed their outright claims of its invalidity and unconstitutionality in

their briefs, we find ironically that this statute becomes the crux of their case and the one possible saving grace for their cause. It is of course elementary that litigants cannot bind us by their interpretation of a statute, however wrong and however much their interpretation, if they persuaded us to follow it, might help them lose their case. We shall now examine this statute in more detail.

Section 1 of the statute provides:

"If the State land office board  *  *  *  *shall discover* before the execution and delivery of a deed or the execution of a contract for the sale of any land, apparent title to which *vested* in the State of Michigan by virtue of a tax sale, that the State of Michigan, or any board, officer, commission, department, public corporation, governmental subdivision, agency, municipal or quasi-municipal corporation thereof owned any parcel of such land or part thereof or interest therein *prior to the apparent vesting of title thereto in the State of Michigan* by virtue of a tax sale, *it shall be the duty of the State land office board*  *  *  * *to withhold the same or part thereof so publicly owned, or in which the public had an interest, from public sale,* and to notify the auditor general of such withholding and the reason therefor." (Emphasis added.)

This statute, when read in its entirety, seems clearly to intend that the State of Michigan and the various public subdivisions and agencies there enumerated should not be deprived of lands they have acquired for other purposes even by such gross and obvious negligence on the part of the land board and other State departments and employees as the facts in this case indicate. We note that the statute is entitled, "An act to protect the interest of the public, acquired other than through taxation, in lands under the jurisdiction and control of the State land office board."

As noted, it appears that the portions of the statute which are controlling in this case have never been interpreted by us. We therefore construe and hold that the word "discover" therein at least includes notice of any interest that other State agencies have in the lands, which, under elementary principles of interpretation, would necessarily include constructive notice by recording. Thus the land board must here be held to have discovered the interest of another State agency or subdivision, namely, the State highway department, when that latter agency had properly recorded its deed. To interpret the statute otherwise would be to impose a subjective rather than an objective test to determine the question of discovery, and also to put a premium upon the studied ignorance or carelessness of State employees. It would in essence be saying to the land board the more time your personnel spends on the coffee break and the less time they devote to their duties of searching the records, the more land you will have authority to sell. We do not think this could have been the intent of the legislature when it enacted this statute and entitled it "an act to protect the interest of the public." On the other hand, the objective test of constructive notice says that if a State agency or subdivision has properly recorded its deed to the lands in question, the State land office board shall be deemed to have notice of that interest, regardless of how deeply it buries its head in the sand.

Having thus interpreted the word "discover" it follows that the land board must be deemed to have discovered the interest of appellants before it conveyed the lands to defendants by the deeds in question. While it is not necessary here for us to so hold, perhaps one of the implications of our decision is that a purchaser at so-called "scavenger sales" from the State land board may not close his eyes and trust

blindly to the authority of the board or the extent or validity of the interest thus acquired.

The next interpretative question to be answered is: Did the appellants own "any parcel of such land or part thereof or interest therein *prior to the apparent vesting* of title thereto in the State of Michigan by virtue of a tax sale"? The law in Michigan is clear that title does not *vest* in the State by virtue of a tax sale until the auditor general has deeded the land to the State after the expiration of the period of redemption. See *Darby* v. *Freeman,* 304 Mich 459; *Langford* v. *Auditor General,* 325 Mich 585.

Tying the facts of this case into the statute we find that the highway department's acquisition of title to the lands (January 18, 1944) occurred within the tax sale redemption period; that it thus preceded the auditor general's deed (July 3, 1944) and thus also preceded the vesting of title in the State by approximately 5 months. Therefore the statute applies and must control the result in this case.

It follows that when the land office board executed deeds to the defendants it was acting without authority (for the mandate of the statute is "it shall * * * withhold * * * from public sale"), as a result of which the deeds it delivered to the defendants were void and could convey no possible interest in the land.

Laches plays no controlling part in the result of this case. Laches can scarcely create title where none existed. Defendants having acquired no interest in the land when they purchased it they cannot acquire such by making improvements, paying taxes, or the expiration of time. However compelling these equities may be, they are no substitute for title acquired according to law.

Lacking a sufficient record, we express no opinion on the question of any possible damages to defend-

ants (such as return of the purchase price, taxes and assessments paid, and related matters) the subject not having been presented below or briefed here. We merely note the possible question. The decree of dismissal is reversed and the cause remanded for the entry of a decree and for further proceedings not inconsistent with this opinion, including the possible exploration of the question of damages, if any. No costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and EDWARDS, JJ., concurred.

KAVANAGH, J., did not sit.