HAMMOND v AUDITOR GENERAL

1. ESTOPPEL—STATES.
    Estoppel may be asserted against the state.

2. ESTOPPEL—DETRIMENTAL RELIANCE.
    Detrimental reliance is an essential element of estoppel.

3. TAXATION—TAX SALES—TAX DEEDS—AUDITOR GENERAL—MINERAL
    INTEREST—OIL AND GAS INTEREST—RESERVATION BY STATE—
    SURFACE ESTATE—MERGER.
    A purchaser of property at a county treasurer's tax sale in 1938
    did not acquire any interest in minerals, coal, oil or gas, even
    though the Auditor General's tax deed to the purchaser in 1940
    failed to reserve to the state any interest in minerals, coal, oil
    or gas, where (1) the state had acquired title to the property in
    1909 through nonpayment of taxes, (2) the state had reserved
    the interests in minerals, coal, oil and gas when it sold the
    property in 1915, and (3) there was no merger of the mineral,
    coal, oil and gas interests reserved by the state in 1915 and the
    surface interest acquired later.

Appeal from Grand Traverse, William R. Brown,
J. Submitted April 6, 1976, at Lansing. (Docket No.
23162.) Decided July 20, 1976. Leave to appeal
applied for.

Complaint by Georgia L. Hammond and Walton
Enterprises, Inc., against the Auditor General, the
Department of Natural Resources, and the State of
Michigan to quiet title to the subsurface estate in
minerals, coal, oil and gas in certain real property
acquired at a tax sale. Summary judgment for
defendants. Plaintiffs appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur 2d, Estoppel and Waiver § 123.
[2] 26 Am Jur 2d, Estoppel and Waiver § 35.
[3] 72 Am Jur 2d, State and Local Taxation § 964.

*Running, Wise & Wilson* (by *Richard W. Ford),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Russell E. Prins,* Assistants Attorney General, for defendants.

Before: T. M. BURNS, P. J., and V. J. BRENNAN and D. E. HOLBROOK, Jr., JJ.

V. J. BRENNAN, J. Plaintiffs, Georgia L. Hammond and Walton Enterprises, Inc., a Michigan corporation, brought an action in Grand Traverse County Circuit Court to quiet title to certain real property. On January 31, 1975, the court granted defendant's motion for summary judgment pursuant to GCR 1963, 117.2(3). Plaintiffs appeal as of right.

The conflict in the case at bar involves whether plaintiffs or defendants hold title to the mineral rights of certain real property in Grand Traverse County, Michigan. Defendants' claim rests with a deed dated May 1, 1915. The State of Michigan had acquird absolute title to the property in question on September 10, 1909, by virtue of nonpayment of taxes. The 1915 deed executed by the Public Domain Commission for the State of Michigan conveyed the premises to one William F. Bowen with reservation of all interest in minerals, coal, oil and gas.

The claim of plaintiffs is grounded upon an Auditor General's tax deed dated March 4, 1940. One George Smith bought the property at a tax sale and proceeded to give timely notice to the last grantee in the regular chain of title as the holder of the surface rights. He also gave timely notice to the Department of Conservation for the State of

Michigan as the holder of the reserved interest in minerals, coal, oil and gas. The plaintiffs are the successors in title to George Smith.

The learned circuit judge has favored us with a well-reasoned opinion in this matter. We quote at length therefrom.

### "ESTOPPEL

"Plaintiff's claim is in part predicated upon a theory of estoppel, the State of Michigan having stood silently by and having made no response whatsoever to the notice of right to reconveyance served by George Smith, 1944. *Oliphant vs Frazho,* 381 Mich 630 [167 NW2d 280 (1969)] clearly supports the proposition that estoppel may be applicable to the State. However, the facts in *Oliphant* disclose that the State of Michigan had affirmatively joined in the dedication of a plat, had approved the plat and had executed a deed to the co-proprietor of the plat pursuant to an earlier land contract. The facts further showed that the plat included some 40 lots laid out on filled land which had subsequently been sold to innocent purchasers and upon which homes, streets and other municipal improvements had been constructed at substantial costs.

"The attempt by the State to assert title to the filled land as against the lot owners was found by the Court to be completely unconscionable and, in fact, a constructive fraud.

"Detrimental reliance is an essential element of estoppel. 9 Callaghans *Mich Civil Jurisprudence.* Estoppel Section 34 page 44. This element, clearly present in *Oliphant,* is lacking in the facts presented in the case at issue.

### "LIEN OR FEE TITLE

"Disposition of the estoppel issue brings into focus the unique issue which eventually must be resolved by an Appellate Court.

"It is the essence of Plaintiffs' claim that the State of Michigan conveyed fee title by its 1944 *[sic]* Auditor General's deed, that the conveyance of all of the title

interest of the State failed to reserve the sub-surface mineral rights in issue, and that such rights as had been reserved by the State in the 1915 conveyance merged with the subsequently acquired title interest of the State and were conveyed along with all other interests to Plaintiff's predecessor in title.

"It is essentially the position of the Defendants that the State of Michigan did not acquire title to the premises in question immediately prior to the execution of the Auditor General's deed in 1940, that the State held, and the Plaintiff's predecessor then acquired, only a lien interest which ripened into title by the notices and the running of the redemption period, that title extended only to the property interests subject to the tax lien and foreclosed. It is undisputed that the sub-surface rights in the State of Michigan were not subject to tax.

"The theory of Plaintiff's find substantial support in a literal reading of a portion of Section 72 of the General Property Tax Act, being Act 207 of 1893. [MCLA 211.72] (*MSA 7.117*). The statute reads in part:

" 'Such deed shall convey an absolute title to the land sold, and constitute conclusive evidence of title, in fee, in the grantee, subject, however, to all taxes assessed and levied on such lands subsequent to the taxes for which the same was bid off.'

"The position asserted by Defendant is more consistent with the notice of the right to reconveyance required under MSA 7.119 by which the title (or lien) by reason of tax purchase becomes a nullity in the event of failure to serve such notices within a period of five years after the tax purchaser becomes entitled to an Auditor General's deed.

"Defendant's position finds further support in the case of *Porter vs Auditor General,* 255 Mich 526 [238 NW 185 (1931)] and the earlier cases analyzed therein which appear to hold that a tax sale and the issuance of an Auditor General's deed is void as to State owned lands or railroad lands which were wholly exempt from taxation.

"While this Court is hesitant to rely upon ancient concepts of seizin, it does note that the case of *State Highway Commissioner vs Simmons,* 353 Mich 432 at

page 440 [91 NW2d 819 (1958)] states the accepted Michigan Law to be that the title does not vest by tax sale in the State of Michigan until the Auditor General deed to the State after expiration of the period of redemption. So likewise it appears in the case at issue that when there is a successful bidder at the tax sale, the tax sale bidder obtains a purchase certificate from the State of Michigan which is surrendered for an Auditor General's deed, all of which occurs *prior* to any title vesting in the State. The fee did not vest in the State of Michigan prior to the Auditor General's deed; there could have been no merger of the fee and the sub-surface rights previously owned.

"Such authorities as *Simmons* and *Porter* indicate to the Court that the Tax Sale purchaser acquires an interest in the tax lien which may ripen into title by subsequent statutory foreclosure proceedings. The Auditor General's deed conveys absolute title, as recited in the statute, only in the sense that absolute title becomes a possibility through regular foreclosure. This inchoate fee title cannot arise as to lands wholly exempt from taxation and the lien of unpaid taxes."

The learned circuit judge has ably set out the existing law. Little would be accomplished by our adding thereto. While we are not happy with the result we must reach in this case, we are bound to follow existing precedent.

Affirmed.