NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0644n.06

No. 13-2195

**FILED**
Aug 18, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| MICHAEL-EDMUND BAMBAS, | ) |
| | ) |
|     Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| CITIMORTGAGE, INC.; MORTGAGE | ) |
| ELECTRONIC REGISTRATION SYSTEMS, INC.; | ) |
| POTESTIVO & ASSOCIATES; DOES 1–50, | ) |
| individually, and jointly and severally, | ) |
| | ) |
|     Defendants-Appellees, | ) |
| | ) |
| and | ) |
| | ) |
| ORLANS ASSOCIATES P.C., | ) |
| | ) |
|     Defendant. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:    ROGERS and GRIFFIN, Circuit Judges; and VAN TATENHOVE, District
Judge.[*]

ROGERS, Circuit Judge. This case involves a home mortgage foreclosure sale in

Michigan. The mortgagees, an assortment of local and national banks and the notorious

Mortgage Electronic Registration Systems, Inc., repeatedly assigned the plaintiff's mortgage.

The result is a complicated chain of title, and a mortgage loan in default. A foreclosure sale took

place and the six-month statutory redemption period passed. Because Michigan law extinguishes

the mortgagor's rights to the mortgaged property after the redemption period expires and the

_____
[*] The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

plaintiff in this case cannot demonstrate that his position to redeem the property would have improved in the absence of the alleged irregularities and fraud, the case is ultimately meritless. Thus, the district court properly granted the defendants' motions to dismiss.

On August 27, 1993, Michael E. Bambas purchased a residence at 6367 Stephen (Street) in Brighton, Michigan. To purchase the home he took out a mortgage from Gehrke Mortgage Corporation, and that mortgage was recorded with the Livingston County Register of Deeds twice: once on September 2, 1993, and another time on November 5, 1993.[1] A review of all of the exhibits presented by the parties establishes a record chain of title constituted by the following duly recorded assignments: Gehrke to Marathon Mortgage Corporation, recorded on November 5, 1993; Marathon to Union Federal Savings Bank of Indianapolis, recorded on March 15, 1995; Union Federal to Waterfield Mortgage Company, Inc., recorded on October 7, 1999; Waterfield to Union Federal, recorded on December 12, 2003;[2] Waterfield to Mortgage Electronic Registration Systems, Inc., (MERS), as nominee for CitiMortgage, recorded on August 15, 2006; MERS to CitiMortgage, recorded on July 28, 2008; and finally, the Hunting National Bank, successor through Sky Bank to Union Federal Bank, to Waterfield, recorded on September 2, 2008. The most salient quirk in this record chain of title is that the link in the chain

---

[1] The mortgage was apparently re-recorded in order to correct the maturity date.

[2] The recorded assignment contains certain handwritten additions and corrections, including a more thorough description of the property and, notably, a scribbling out of the term "Savings" from the printed name of the assignee "Union Federal Savings Bank of Indianapolis" and a correction for the address of the assignee. Bambas also presents in the record the exact same assignment without the handwritten corrections. Bambas claims that Union Federal *Savings* Bank of Indianapolis is a different entity from Union Federal Bank of Indianapolis. The defendants, and apparently the district court, treat these two entities as identical. This assumption appears to be justified, since "Union Federal Savings Bank" and "Union Federal Bank" have the same physical address, which they also share with Waterfield. The complaint does not make this distinction, nor did Bambas distinguish the two entities before the district court. This argument attacking the validity of the chain of title, because it was not raised before the district court, is forfeited on appeal. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

between Union Federal and Waterfield was recorded after both the Waterfield–MERS and MERS–CitiMortgage assignments.[3]

As early as 2008, Bambas was falling behind on his interest payments, and CitiMortgage offered to modify the loan. By the summer of 2010, despite a lengthy back-and-forth with CitiMortgage and its foreclosure counsel Orlans Associates, regarding a modification of the terms of the loan, Bambas was still behind on his mortgage payments. At this time, CitiMortgage offered Bambas the option of modifying the terms of his loan, and informed him that he would have to present copies of certain financial documents in order to be considered. Apparently, Bambas's request for a repayment plan was approved, but Bambas contested the amount of his delinquency and certain fees. In April 2011, CitiMortgage notified Bambas that the loan was in default and that CitiMortgage intended to accelerate all sums due under the mortgage unless Bambas cured the default by paying the past due amount and certain fees. Bambas never cured the default.

In July 2011, CitiMortgage retained Potestivo & Associates, P.C., to represent it during foreclosure proceedings. Potestivo & Associates again reached out to Bambas to modify the loan, requesting that Bambas complete and submit financial paperwork along with supporting documentation. On October 17, Potestivo & Associates sent Bambas a letter notifying him that he was ineligible for a loan modification for failure to submit the required paperwork.

In 2012, the property was sold in a foreclosure sale initiated by advertisement, pursuant to Mich. Comp. Laws § 3201. Notices were published four weeks in a row in the *Tri-County Times*, a newspaper that circulated in Livingston County, and a notice was posted conspicuously

---

[3] The most reasonable, though not the only plausible, explanation for this mix-up that can be inferred from the record is that Union Federal and Waterfield are closely related entities whose records became intermingled. As mentioned in note 2, *supra*, the entities shared the same physical address. Waterfield appears to be a mortgage-related affiliate of the commercial bank Union Federal.

on the property. The notices indicated that the foreclosure sale would occur on March 28, 2012. In a letter addressed to Potestivo & Associates, Bambas confirmed that he had seen the notice of foreclosure taped to his front door. At Bambas's request, CitiMortgage agreed to postpone the scheduled sale for a few weeks. Accordingly, the deputy sheriff in charge of the foreclosure sale adjourned the sale five weeks in a row, until May 2, 2012. CitiMortgage purchased the property at the sheriff's sale on May 2.

On August 29, 2012, Bambas filed a complaint in the circuit court for Livingston County, alleging that CitiMortgage lacked standing to foreclose and that the sheriff's sale was void. On the basis of diversity of citizenship, CitiMortgage removed the case to the United States District Court for the Eastern District of Michigan. A few months later, the district court dismissed the case. *Bambas v. CitiMortgage, Inc.*, No. 12-15161, 2013 WL 4042595, at \*7 (E.D. Mich. Aug. 9, 2013). The district court held that CitiMortgage possessed an "interest in the indebtedness" entitling it to foreclose when Bambas defaulted on the loan, that CitiMortgage had record chain of title as required by Michigan statute, and that Bambas failed to advance any facts to demonstrate prejudice. *Id.* at \*6.

We review de novo the district court's grant of CitiMortgage's motion to dismiss for failure to state a claim. *Shuler v. Garrett*, 743 F.3d 170, 172 (6th Cir. 2014). Because our jurisdiction is based on diversity of citizenship, we apply the substantive law of the forum state of Michigan. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). When confronted with undecided issues of state law, we must "anticipate how the relevant state's highest court would rule" by reasoning from decisions of the state's intermediate appellate courts and other persuasive authority. *See Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (quoting *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)) (internal quotation marks omitted).

Although the record of the mortgage is muddled with irregularities, none of them supports setting aside the foreclosure as Bambas requests. The recorded chain of title in this case is messy, with various unrecorded and unexplained assignments, one recorded but nonetheless technically invalid assignment that had to be corrected and recorded again, and one link in the chain of title missing for a few years. However, because the redemption period has expired, Bambas's right to challenge the foreclosure is narrowly circumscribed by Michigan law, and none of the possible grounds of relief announced in the case law supports his claim.

This court, in a recent published opinion, comprehensively reviewed Michigan's law regarding a mortgagor's right to challenge a foreclosure sale after the redemption period:

> Non-judicial foreclosures, or foreclosures by advertisement, are governed by statute under Michigan law. While the statutory scheme provides certain steps that the mortgagee must go through in order to validly foreclose, it also controls the rights of both the mortgagee and the mortgagor once the sale is completed. The statutes provide the mortgagor six months after the sheriff's sale in which to redeem the property. Mich. Comp. Laws § 600.3240(8). Once this statutory redemption period lapses, however, the mortgagor's "right, title, and interest in and to the property" are extinguished. Mich. Comp. Laws § 600.3236.
>
> Michigan's foreclosure-by-advertisement scheme was meant to, at once, impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties. To effectuate this interest in finality, the ability for a court to set aside a sheriff's sale has been drastically circumscribed. Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made "a clear showing of fraud, or irregularity." Whether the failure to make this showing is best classified as standing issue or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this "high standard" in order to have a foreclosure set aside after the lapse of the statutory redemption period.
>
> It is further clear that not just any type of fraud will suffice. Rather, "[t]he misconduct must relate to the foreclosure procedure itself."

*Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 359–60 (6th Cir. 2013) (footnotes and citations to case law omitted); *accord Milton v. Comerica Bank*, 2014 WL 2620986, at *3 (Mich. Ct. App. June 12, 2014) (per curiam) (citing favorably this discussion from *Conlin*).

None of Bambas's allegations constitute a clear showing of fraud or irregularity. First, Bambas does not have standing to challenge the validity of the recorded assignment from Waterfield to CitiMortgage. Bambas argues that at the time of the assignment, Waterfield had no interest in the mortgage, because its interest in the mortgage must have been held by either Fannie Mae or Union Federal Bank, to which Waterfield had already made separate assignments. Appellant's Br. at 8. As inexplicable as this set of assignments is, all that matters for purposes of Bambas's challenge to the foreclosure sale is whether there is a "record chain of title," as required by the foreclosure-by-advertisement statute. Mich. Comp. Laws § 600.3204(3). As we have explained in considering a similar challenge under § 600.3204 to an interim assignment of a mortgage: "Even if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed." *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010). The Michigan Supreme Court has stated unequivocally that "the validity of the foreclosure is unaffected by any unrecorded assignment of interest held for security." *Residential Funding Co. v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011) (order denying leave to appeal) (quoting *Arnold v. DMR Fin. Servs., Inc.*, 532 N.W.2d 852, 856 (Mich. 1995)).

Similarly, Bambas also cannot challenge the record chain of title by stating that he is in danger of double liability. Bambas now claims that he has "a reasonable concern that another has the note and ability to enforce it against him." Appellant's Reply Br. at 6. This argument fails both factually and legally. All of the recorded assignments, according to the assigning document, transferred the underlying note along with the mortgage. Furthermore, the copy of the note in the record, which on its face contains the negotiated assignments, is consistent with the note having followed the mortgage all the way to CitiMortgage. Regardless, even were the

note separated from the mortgage, the holder of the mortgage could still foreclose. *Saurman*, 805 N.W.2d at 184.

With respect to Bambas's argument that certain transfers were invalid because they were allegedly "robo-signed," Bambas has forfeited this argument by failing to allege with any particularity the legal basis for the argument in the complaint and by not meaningfully developing the argument before the district court. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010). The complaint, paragraph 24, states merely that "[a]ny and all documents containing the [robo-signers'] signatures would be considered null and void as these documents would be fraudulent in content." The record, however, demonstrates that the alleged "robo-signers," Crystal Moore, Vice President of Waterfield, and Mary Jo McGowan, notary, physically signed the documents. True enough, their signatures appear to be perfunctory, single-loop scrawls. However, Bambas presents no theory supported by Michigan law as to why the careless and cursory signing of an assignment would render it void. This argument is forfeited.

As for the alleged irregularities with the form of the notice of the foreclosure sale, none of them can form the basis for setting aside the foreclosure sale. First, Bambas argues that the notice, which stated that the sheriff's sale would take place on March 28, was wrong, because the sale actually took place on May 2. Appellant's Br. at 14. But notices of adjournment were posted each week at the courthouse where the sale was to take place. Michigan law permits adjournments of the sheriff's sale and does not require any special form of notice to the mortgagor beyond a posting at the place of sale, if the sale is adjourned for a week at a time. Mich. Comp. Laws § 600.3220. Nonetheless, Bambas claims that he relied on the fradulent statements of Potestivo that the sale would be adjourned for an unspecified longer period of time. However, Bambas cites to no authority of Michigan law that would disregard the defendants'

compliance with § 600.3220 and thereby provide relief for his claim that the notice of the date of sale was defective. Bambas also claims that the *Tri-County Times*, in which the notice of foreclosure appeared, does not publish in Livingston County, where the property is located. Not publishing the notice in a the property's county would violate Mich. Comp. Laws § 600.3208. True enough, one notably irrelevant affidavit of publication in the record states that the *Tri-County Times* is published in Genesee County. However, true to its name, the *Tri-County Times* is not published solely in that one county of Genesee. The affidavit of publication pertaining to the legally effective notices of foreclosure, the ones that supported the final sheriff's sale, states unambiguously that the *Tri-County Times* is published in Livingston County.

Lastly, the late assignment and recordation that purported to retroactively fix the missing link in the "record chain of title," *see* Mich. Comp. Laws § 600.3204(3), appear to be valid under Michigan's after-acquired title doctrine. Although we have found no Michigan case law applying that doctrine to mortgages, there are sound reasons why Michigan would extend the doctrine, typically applied to fee titles, to mortgages.

The after-acquired title doctrine in Michigan is clear and straightforward, at least as typically applied to titles in real property:

> Under the doctrine of after-acquired title, if a grantor by warranty deed conveys an estate that the grantor does not own and subsequently acquires title to that estate, that title inures to the benefit of his or her grantee. This is a form of estoppel, and the grantor is estopped to deny the title the grantor subsequently acquired.

*Richards v. Tibaldi*, 726 N.W.2d 770, 781 (Mich. Ct. App. 2006) (quoting 1 John G. Cameron, Jr., *Michigan Real Property Law* § 10.24, at 366 (3d ed. 2005)). Contrary to Bambas's argument, *Richards v. Tibaldi* actually supports applying the doctrine to mortgages. In *Richards*, the Michigan Court of Appeals held that "quitclaim deeds can never operate to convey an after-

acquired title," because such deeds "d[o] not contain any express or implicit statement that the grantors were seised of a title in fee, or, stated otherwise, that the grantors warranted title." *Id.* at 782. *See also* Mich. Comp. Laws § 565.3 (regarding quitclaim deeds); *see also Ziegler v. Simmons*, 91 N.W.2d 819, 822 (Mich. 1958) (same). Under Mich. Comp. Laws § 565.152, which formalizes the requirements of quitclaim deeds, a quitclaim deed must announce itself as such, effectively denying that there is any warranty.[4] In contrast to an avowed denial, an "express *or implicit* statement" that the grantor has title is sufficient to pass after-acquired title. *Richards*, 762 N.W.2d at 782 (emphasis added). Indeed, some older Michigan Supreme Court cases have held that the doctrine of after-acquired title applies to non-quitclaim deeds that lack an explicit covenant of warranty. *Klever v. Klever*, 52 N.W.2d 653, 659–60 (Mich. 1952) (citing *Pendill v. Marquette Cnty. Agric. Soc'y*, 55 N.W. 384, 385 (Mich. 1893)); *see also Richards*, 762 N.W.2d at 781–82. There being no quitclaim-like denial of warranty in the mortgage assignments in this case, the after-acquired title doctrine applies.

Consistent with the principles of estoppel, this rule protects the interests of the parties who in good faith paid valuable consideration for the assignment of the mortgage. All that Michigan law necessarily requires with respect to the "record chain of title" is that all interim assignments be recorded prior to the date of sale. *Kim v. JPMorgan Chase, N.A.*, 825 N.W.2d 329, 332 (Mich. 2012); *see also Sobh v. Bank of Am., NA*, No. 308441, 2013 WL 2460022, at *3 (Mich. Ct. App. June 6, 2013). The record-chain-of-title requirement serves as an assurance that the foreclosing party rightfully holds the mortgage. There appears to be no compelling reason to require that the recordings be chronological before the foreclosure can proceed, as long as the

---

[4] *Compare* Mich. Comp. Laws § 562.152 (providing for *quitclaim deeds* the form "A.B. quit claims to C.D."), *with* Mich. Comp. Laws § 565.151 (providing for *warranty deeds* the form "A.B. conveys and warrants to C.D.").

chain is complete and the rightful holder of the mortgage can be discerned from the public record. *See Livonia Props.*, 399 F. App'x at 103.

Bambas has also failed to allege any plausible prejudice. The Michigan Supreme Court has held:

> [D]efects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*. . . . [T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with [Mich. Comp. Laws §] 600.3204. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute.

*Kim*, 825 N.W.2d at 337; *see also Conlin*, 714 F.3d at 361–62. Bambas admits being in default on the mortgage, and he did not state in his complaint that he had the financial resources necessary to redeem the mortgage before the end of the redemption period. Completed foreclosure sales are upheld notwithstanding notice defects when "the mortgagor would have been in no better position had notice been fully proper and the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property." *Conlin*, 714 F.3d at 362 (quoting *Lessl v. CitiMortgage, Inc.*, 515 F. App'x 467, 469 (6th Cir. 2013)). That is the case here. We have before held that a challenge to an assignment on the basis of "robo-signing" cannot support an action for lack of prejudice. *See id.* There is no lingering risk of double liability: at no time did any party attempt to recover from Bambas a debt that had already been recovered by another party, and the foreclosure sale eliminated Bambas's obligations on the mortgage. *See Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 641 (Mich. 1993); *see also Livonia Props.*, 399 F. App'x at 102. The alleged defects in notice did not cause prejudice, because Bambas acknowledged seeing the notice posted on his front door, and he thereby also had constructive notice of the notices of adjournment posted weekly at the place of sale. Having

made no argument that he was prejudiced by the course of events culminating in the foreclosure sale, Bambas is not entitled to any relief.

Thus, the complaint stated no plausible claim for relief on either of its two state-law counts. The district court properly did not consider any relief for Bambas under various federal statutes, including the Real Estate Settlement Practices Act and the Truth-in-Lending Act, because the complaint did not state causes of action under federal law and Bambas never amended the complaint to include federal-law causes of action. The complaint casually alludes to federal law in its caption and in its requests for relief under the two state-law counts, but it does not set out any claims under federal law. This does not suffice to state a claim for relief. And, as CitiMortgage correctly points out, Bambas never formally moved to amend his complaint to include these claims. Because Bambas failed to address the leave-to-amend issue in his reply brief, he has waived that issue. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1052–53 (6th Cir. 2011).

And finally, because Bambas has failed to state any claim, we do not address Bambas's claim that the district court improperly dismissed as a nominal party Potestivo & Associates, CitiMortgage's counsel for the foreclosure proceedings.

For the foregoing reasons, we AFFIRM the district court's judgment.