FRANK P. PENDILL ET AL. v. THE MARQUETTE COUNTY AGRICULTURAL SOCIETY.

*Deed—Estoppel—Adverse possession.*

| | |
|---|---|
| 95 | 491 |
| 96 | 256 |
| 95 | 491 |
| 97 | 64 |
| 95 | 491 |
| 115 | 266 |
| 95 | 491 |
| 124 | 10 |
| 95 | 491 |
| 153 | 2641 |
| 95 | 491 |
| 155 | 501 |

1. Where a deed imports to convey a fee, though it lack a covenant of warranty, the doctrine of estoppel permits the grantee to have the benefit of such titles as the grantor may subsequently acquire.

2. A deed executed by heirs, as recited therein, to carry into effect an amicable division of land belonging to the estate, which

purports to convey to each heir all of the right, title, and interest of his co-heirs in the parcel of land set off to him, to have and to hold the same to him and his heirs and assigns, forever, limits the assertion of title, if any, to that belonging to the estate, of which it may be presumed all of the heirs were equally cognizant.

3. It is error for the court to direct a verdict for a defendant in ejectment, on the ground of his adverse possession of the land for the statutory period, if there is any evidence in the case fairly tending to disprove any one of the requisites to such a possession.

Error to Marquette. (Stone, J.) Argued April 6, 1893. Decided May 31, 1893.

Ejectment. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Hayden & Young,* for appellants.

*Ball & Hanscom,* for defendant.

HOOKER, C. J. Plaintiffs brought ejectment, claiming title in fee to the premises described in their declaration, and proved a perfect title from the federal government. The defenses made are—

1. That plaintiffs are estopped from asserting their title against defendant.
2. That defendant has acquired title by adverse possession.

The ancestor of plaintiff Pendill, one James P. Pendill, was the owner of a tax title covering the land in controversy, upon which an Auditor General's deed had issued to him. After his death, plaintiff Pendill, and the other heirs and the widow of the decedent, joined in a partition deed reading as follows, viz.:

" This indenture, made * * * between Frank Pendill [and the other heirs], who are the sons and heirs at law of James P. Pendill, deceased, * * * witnesseth:
" That the said parties, as such heirs at law and widow,

have by amicable arrangement divided among themselves · the property of said estate * * * * * * * * * *

"Now, therefore, in order to carry into effect the said agreement and division, the said parties, in consideration of the sum of one dollar to each in hand paid, the receipt whereof is hereby confessed and acknowledged, have granted, sold, and conveyed all their right, title, and interest in and to the following described land:   [Here follow descriptions of land conveyed to the several parties.]

"To have and to hold to each of said grantees the lands above described, as conveyed and set off to them in severalty, and to their heirs and assigns forever."

It is defendant's theory that, under this partition deed, any title to the premises subsequently acquired by Frank P. Pendill inured to the benefit of the grantee named in that deed, James Pendill, and through him to defendant. In the case of *Jackson v. Waldron*, 13 Wend. 178, it is said that—

"The principle of an estoppel, as applicable to deeds, is to 'prevent circuity of action, and to compel parties to perform their contracts.'   Thus, a party asserting in a deed the existence of a particular fact, and thereby inducing another to contract with him, cannot by a denial of that fact compel the other party to seek redress against his bad faith by suit."

This doctrine is well supported.   So, where the deed imports to convey a fee, though it lack a covenant of warranty, the doctrine of estoppel permits the grantee to have the benefit of such titles as the grantor may subsequently acquire.

In the case of *Van Rensselaer v. Kearney*, 11 How. 325, it is said by Mr. Justice Nelson that—

"The principle deducible from these authorities seems to be that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seised or possessed of a particular estate in the premises, and which estate the deed purports to convey, or, what is the same thing, if the seisin or

possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor, and all persons in privity with him, shall be estopped from ever · afterwards denying that he was so seised and possessed at the time he made the conveyance."

We may then · inquire whether the partition deed relied on carries on its face, by way of recital or averment, the statement that the grantors or their ancestor was seised of a title in fee in the premises, either in express terms or by necessary implication. After naming the parties, the deed recites the fact that they "have by amicable arrangement divided among themselves the property of the estate." The consideration is "one dollar to each," for which they " have granted, sold, and conveyed all their right, title, and interest" in the land mentioned. If there is an assertion of any particular interest or title, either express or by necessary implication, it is limited to that belonging to the estate, of which it may be presumed that all were equally cognizant. We see no opportunity for the application of the doctrine of estoppel to this case.

The question of adverse possession remains. Defendant purchased the premises from James Pendill, to whom this tax title was conveyed by the partition deed. Defendant claimed that it and its grantors had been in possession, claiming under this tax deed, for upwards of 10 years before this action was brought. The court instructed the jury that the evidence established such claim, and directed a verdict for defendant. The question, then, is, was the court justified in holding, as a matter of law, that the facts shown constituted adverse possession, instead of submitting the question to the jury?

In the case of *Yelverton v. Steele*, 40 Mich. 541, Mr. Justice GRAVES, in stating the law upon the subject of adverse possession, said: "The doctrine which sanctions the divestiture of the true owner by hostile occupancy is to be taken strictly, and the case is not to be made out by

inference, but by clear and cogent proof;"—supporting his opinion by numerous authorities. He quotes with approval the language of Mr. Justice Duncan where he says that "it must be an actual, continued, visible, notorious, distinct, and hostile possession." While it would have been the duty of the court to direct a verdict for the plaintiffs in case of the absence of clear and cogent proof upon any one of these six requisites, he could not properly direct a verdict for the defendant unless each and every one of them was established by such proof, uncontroverted; for, the moment that any evidence fairly tending to disprove one of them was given, a question of fact for the jury arose, whether it was shown by plaintiffs or appeared from the examination of defendant's witnesses.

The partition deed was executed August 3, 1885, at which time James Pendill succeeded to the tax title of his ancestor. He was called upon rebuttal, and testified as follows:

"*Q.* You made your contract with Maynard in the summer of 1886,—July or June, 1886. What do you say with respect to your drawing rent, or there being anybody in occupation of the property, up to that time?

"*A.* I am certain it ceased before that time."

On cross-examination the same witness was questioned and answered as follows:

" *Q.* The slaughter-house he [meaning the ancestor] had there was occupied by him, was it not, up to the time of his death?

" *A.* Not all the time, sir.

" *Q.* I mean he had something there, he kept something there, and looked after it.

"*A.* I don't think—not at the time—he had anything there before it burned.

"*Q.* I mean up as long as he lived. Didn't he have some tools?

" *A.* I don't believe anything was ever kept there for some time. We had no use for it.

"*Q.* He still retained charge of it, and looked after the property, I suppose, did he not?

"*A.* In what way?

"*Q.* Well, looked after it to see there were no trespasses committed on it.

"*A.* I don't believe he had been there for some years.

"*Q.* Don't you think he was out there the season before he died?

"*A.* No, sir; I don't think he had any occasion to go there.

"*Q.* He had tenants living in the house?

"*A.* I don't think he did at that time.          •

"*Q.* Do you know about it?

"*A.* Well, I can't state positively just when they came and went, but I know the house was vacant a large part of the time."

Again, the witness Prentice, who went in 1881 to look at the old house with a view to using it as a pest-house, says that he found the house unoccupied, windows out, the doors down, and the floor about used up.

All this was evidence bearing on the question of whether there was actual or visible or notorious or continued occupancy; and though the court may perhaps properly have felt that the great preponderance of evidence showed the possession claimed, in which opinion the jurors might have concurred, it was their province to deal with the question, which could not properly be taken from them. We see no alternative but to reverse the judgment, with costs, and award a new trial.

Ordered accordingly.

McGRATH, LONG, and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.