GADSBY v. MONROE.

1. HOMESTEAD—ALIENATION.
   An attempted conveyance of a homestead by a husband without the wife's signature is invalid, though expressly made subject to a life estate previously conveyed to the wife.

2. SAME—ABANDONMENT.
   A homestead is not abandoned by the mere absence of the owner from the State, where his wife continues to occupy the house, and it does not appear that the husband has acquired an independent homestead elsewhere.

3. QUITCLAIM DEED—AFTER ACQUIRED TITLE.
   A quitclaim deed is ineffective to convey a title subsequently acquired.

Error to Kalamazoo; Buck, J. Submitted October 14, 1897. Decided December 15, 1897.

Ejectment by Sylvia T. Gadsby and William Shakespeare against Eliphalet Monroe and others. From a

judgment for plaintiffs on verdict directed by the court, defendants bring error.   Reversed.

*D. O. French,* for appellants.

*Howard, Roos & Howard,* for appellees.

MONTGOMERY, J.  This is an action of ejectment. The property involved is lot No. 42 of the Kalamazoo Institute addition to the village (now city) of Kalamazoo. On and before the 17th of June, 1874, Charles H. Hurd held the legal title to the premises, and occupied them, with his wife, as a homestead.  On that day he made a lease to his wife, providing for joint occupancy during the lives of both, and continuing her life estate after his demise until her death.  In August, 1883 (the occupancy of the premises as a homestead still continuing), Mr. Hurd made a warranty deed of the premises to his daughter, Mrs. Gadsby, one of the plaintiffs in the case, subject to the life estate previously conveyed to his wife, and also reserving an estate to himself for life.  Mrs. Hurd did not join in this deed.  Mrs. Gadsby, on the 4th of December, 1895, executed a quitclaim deed to an undivided half interest in the land to plaintiff Shakespeare. Mrs. Hurd continued to occupy the premises until her death, in 1895; Mr. Hurd continuing to reside with her until 1887, when he went to Nebraska, where his daughter was residing, and remained until his death, in February, 1896.  On the 27th of July, 1888, defendant Monroe commenced suit by attachment against Hurd, and attached the land in question.  Under these proceedings a sale was made, and the title derived under this sale is now vested in Monroe.  The other defendants are his tenants.  The circuit judge directed a verdict for the plaintiffs, and the defendants bring error.

It is apparent that, if the deed from Hurd to Mrs. Gadsby was valid, this direction was right, as the title would vest in the two plaintiffs, and as the occupancy by the defendants was conceded by stipulation.  The Consti-

tution provides (article 16, § 2): "* * * Such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same." This provision has been considered by the court many times, and it has been held that the protection of the wife and children was intended, and that any attempted conveyance by the husband alone is invalid, and not to be treated as a valid conveyance subject to the homestead right. *Dye* v. *Mann*, 10 Mich. 291; *Sherrid* v. *Southwick*, 43 Mich. 519. See, also, Wap. Hom. & Exemp. 472, and note.

It is contended that the purpose of the statute is fully met by the reservation of a life estate. It is perhaps a sufficient answer to this to say that the Constitution deals with the land which constitutes a homestead, and not with any specific interest therein. But it may be added that if, at the death of the husband and wife, minor children should happen to be living, their interests would not have been protected by the reservation of a life estate to the wife. We are cited to the case of *Ferguson* v. *Mason*, 60 Wis. 377, as sustaining the plaintiffs' contention. The case goes far in that direction, although it should be noted that the language of the constitutional provision under consideration in that case is materially different from ours. This case is criticised at length in Wap. Hom. & Exemp. 473 *et seq.* It is enough to say that that case is made to turn upon terms in the Wisconsin Constitution not found in ours, and that our previous construction of the Constitution of this State must be adhered to. It follows that the deed of 1883 to Mrs. Gadsby was invalid.

It is equally clear that the attachment proceedings failed to vest title in the defendant Monroe, unless the homestead right was in some way cut off by abandonment before the levy and sale. The wife still occupied the house, and the husband, as the head of the family, was entitled to return to it at any time. There is no evidence that he had acquired an independent homestead elsewhere.

Under these circumstances, the homestead had not been abandoned, and the circuit judge was right in so holding. Thomp. Hom. & Exemp. § 277; Wap. Hom. & Exemp. ~580.

It follows that the plaintiff Mrs. Gadsby showed a perfect title in herself, and under section 7815, 2 How. Stat., the court might properly have directed a verdict for her, and entered judgment accordingly. *McCammon* v. *Railroad Co.*, 66 Mich. 442. This course was not pursued, however; a joint judgment having been directed for the plaintiffs. As Mrs. Gadsby took nothing by her deed, Shakespeare, who claimed by quitclaim from her before her father's death, took nothing. *Frost* v. *Missionary Soc.*, 56 Mich. 69.

Judgment reversed, and a new trial ordered.

The other Justices concurred.