RICHARDS v TIBALDI

Docket No. 270176. Submitted October 12, 2006, at Petoskey. Decided October 24, 2006, at 9:05 a.m.

Christopher Richards brought an action in the Grand Traverse Circuit Court against Joseph and Patricia Tibaldi to quiet title to a parcel of property that Keyton's Development Corporation (KDC) had conveyed by quitclaim deed at different times to both Richards and the Tibaldis. When KDC conveyed the property to Richards, James Keyton owned it, rather than KDC, and his wife, Diane Keyton, held a dower interest. Because the deed was given as security, Richards did not record it for 1½ years. After Richards recorded the deed, Keyton and his wife conveyed the property by quitclaim deed to KDC, and KDC subsequently conveyed it to the Tibaldis. Richards then filed an action to quiet title to the property against the Keytons and KDC and recorded a notice of lis pendens. The Tibaldis were not parties to that litigation. They recorded their deed after that action was filed, following which the Keytons-to-KDC deed was also recorded. Richards eventually obtained a default judgment against KDC. He asserted in this action that he held superior title to the property and that the Tibaldis' failure to intervene in his action against KDC precluded them from challenging his title. The court, Thomas G. Power, J., granted summary disposition to the Tibaldis, concluding that they owned the property. Richards appealed.

The Court of Appeals *held*:

1. The doctrine of res judicata does not bar the Tibaldis' claim of ownership on the basis of Richards's previous lawsuit. A default judgment is treated the same as a litigated judgment for purposes of res judicata and is considered a judgment on the merits. While it is arguable that the elements of res judicata in general are satisfied in this case, MCR 3.411, which address actions to quiet title, also affects the res judicata analysis. Under MCR 3.411(H), the prior judgment determined only the rights of the persons who were parties to that action and persons claiming through those parties by a title accruing after commencement of the action. While the Tibaldis claimed their title through KDC, which was a party to the prior action, their title accrued by a quitclaim deed

before Richards brought his action against KDC. MCL 565.401, which concerns the notice provided by recording judgments affecting property, does not alter the effect of Richards's default judgment against KDC.

2. MCR 2.205, 2.209, and 3.411(H) did not mandate that the Tibaldis intervene in the prior lawsuit. While MCL 600.2701(1) provides for the filing of a notice of lis pendens to give constructive notice to real estate purchasers, the Tibaldis acquired their interest in the property before Richards filed his prior lawsuit and notice, although they recorded their deed after.

3. The Tibaldis were not precluded by the doctrine of clean hands from asserting title to the property. That doctrine denies equitable relief, such as the quieting of title, to one tainted with inequitableness or bad faith, regardless of a defendant's improper behavior. Under that doctrine, a court will refuse to grant equitable relief if there are indications of unfairness or overreaching on an equity plaintiff's part. Despite constructive notice in this case, however, the Tibaldis' failure to intervene in the prior lawsuit does not reflect bad faith or unfairness.

4. The trial court correctly quieted title in favor of the Tibaldis because they acquired sound title and Richards never acquired an interest in the property. Under MCL 565.29, the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers. Richards's quitclaim deed from KDC was recorded before KDC executed the deed to the Tibaldis. KDC, however, did not have title at that time, and Richards acquired no rights to the property. The doctrine of after-acquired title provides that, if a grantor conveys an estate that the grantor does not own and subsequently acquires title to the estate, that title inures to the grantee's benefit. The doctrine of after-acquired title does not apply to quitclaim deeds, however, so the Keytons' subsequent conveyance of the property to KDC did not cure the defect in the original conveyance to Richards.

Affirmed.

1. JUDGMENTS — RES JUDICATA — PROPERTY.

A judgment determining a claim of title, equitable title, right to possession, or other interests in land determines only the rights and interests of the known and unknown persons who are parties to the action and the rights and interests of persons claiming through those parties by a title accruing after the commencement of the action, notwithstanding that the general requirements for res judicata would otherwise apply (MCR 3.411[H]).

2. DEEDS — QUITCLAIM — DOCTRINE OF AFTER-ACQUIRED TITLE.

    The doctrine of after-acquired title provides that, if a grantor conveys by warranty deed an estate that the grantor does not own and the grantor subsequently acquires title to the estate, that title inures to the grantee's benefit; the doctrine does not apply to quitclaim deeds, which can never operate to convey an after-acquired title.

*Skinner Professional Law Corporation* (by *Staci M. Richards*) for Christopher Richards.

*Miller, Canfield, Paddock & Stone, PLC* (by *Katheryne L. Zelenock*), for Joseph and Patricia Tibaldi.

Before: WHITBECK, C.J., and MURPHY and SMOLENSKI, JJ.

MURPHY, J. Plaintiff appeals as of right an order denying his motion for summary disposition and granting summary disposition in favor of defendants Joseph and Patricia Tibaldi.[1] This order also declared defendants the fee-simple owners of a parcel of land (the property) located in Grand Traverse County. A determination regarding the ownership of the property was the sole issue plaintiff sought to have resolved in this action to quiet title. The property had ostensibly been conveyed to plaintiff and to defendants at different times through deeds executed by an individual who was subsequently incarcerated for fraudulent activity. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case presents a factual history that is not, for the most part, in dispute. Rather, the legal conclusion to be drawn from those facts is the subject that is hotly contested by the parties.

---

[1] Defendant Hamilton Farm Bureau was dismissed without prejudice pursuant to a stipulation by the parties. For purposes of this opinion, our reference to "defendants" pertains to the Tibaldis only.

On October 15, 2002, James T. Keyton executed a quitclaim deed conveying the property from Keyton's Development Corporation (KDC) to plaintiff for $1. Keyton signed the deed as president of KDC. Plaintiff asserted that Keyton was KDC's sole shareholder, and there is no evidence to the contrary. This deed was not recorded with the Grand Traverse County Register of Deeds office until February 5, 2004. According to plaintiff, the reason for the delay in recording the deed was that he had provided real estate investment and loan monies to Keyton, along with renovation services, and the deed was given to plaintiff as security to be recorded if Keyton failed to repay plaintiff, which eventually was the case.[2] Unfortunately, KDC was not the legal title-holder of the property when it was quitclaimed to plaintiff. Rather, at that time, Keyton owned the property individually, and Keyton's wife Diane held a dower interest. Plaintiff argued that Keyton had led him and others to believe that it was KDC that owned various real estate investment properties.[3]

In August 2003, Hamilton Farm Bureau obtained a judgment against KDC and Keyton in another matter, which subsequently resulted in a writ of execution being issued in August 2004 and a notice of levy being recorded against the property on October 1, 2004. Recall that plaintiff had recorded his deed regarding the property on February 5, 2004. On March 1, 2004, the Keytons, James and Diane, executed a quitclaim deed

---

[2] Plaintiff claimed that he regularly provided Keyton with funds and services after the deed was executed with the understanding that the deed also constituted continuing security for Keyton's obligations to plaintiff. Plaintiff contended that he finally recorded the quitclaim deed after Keyton's failure to repay a $50,000 loan.

[3] Plaintiff alleged that Keyton's modus operandi was to give deeds as security, listing KDC as the owner, when actually the true owners of the properties described in the deeds were Keyton or his wife.

conveying the property from themselves to KDC. This deed, which indicates that less than $100 was paid in consideration for the conveyance, was not recorded until November 3, 2004. On April 20, 2004, KDC quitclaimed the property to defendants, the Tibaldis, with James Keyton executing the deed as KDC's president. This deed, which indicates that less than $100 was paid in consideration for the conveyance, was recorded on October 22, 2004.[4]

Adding to the confusion, on June 18, 2004, plaintiff filed a quiet-title action against KDC and the Keytons individually. Plaintiff maintained that he held legal and equitable ownership of the property, superior to any claims of KDC or the Keytons, pursuant to the October 2002 quitclaim deed and on the basis of the circumstances in which plaintiff provided funds and services to Keyton in exchange for the security of the deed. A notice of lis pendens relative to the lawsuit was recorded on the same day that the complaint was filed, June 18, 2004. When the suit and lis pendens were filed, the Keytons-to-KDC and the KDC-to-Tibaldis deeds had been executed but not recorded. The suit against Diane Keyton was dismissed on summary disposition. On May 23, 2005, a default judgment was entered against KDC in the action for failure to appear, with the judgment also providing that the claim against Mr.

---

[4] Defendants also appear to be victims of James Keyton. Defendants assert that they gave Keyton $100,000 for real estate investments and that they received a deed to the property to secure payments owed or in lieu of partial repayment of Keyton's obligations. Plaintiff does not challenge this assertion. We note that the record does not contain any deposition testimony. There is, however, an affidavit from Diane Keyton in which she avers: "It was not until March, 2004 that I conveyed the Property to [KDC], with the intention that the Property was to be further conveyed by [KDC] to Patricia and Joseph Tibaldi, in satisfaction of debts and obligations owed by my husband and/or [KDC] to the Tibaldis."

Keyton was dismissed without prejudice.[5] The judgment was recorded with the register of deeds office on June 10, 2005. Under the default judgment, title was quieted in favor of plaintiff. Significantly, defendants were not named as parties in the earlier litigation. By the time the default judgment was entered, the deeds conveying the property from the Keytons to KDC and then to defendants had long been recorded. It is plaintiff's position that defendants should have intervened in the earlier lawsuit.

On August 15, 2005, plaintiff filed the complaint in the case at bar, requesting the trial court to quiet title to the property in his favor. Plaintiff subsequently filed a motion for summary disposition, arguing that defendants never intervened in the previous lawsuit, thereby precluding them from challenging plaintiff's title in the present case, and that there was no genuine issue of material fact that plaintiff is the true owner of the property, holding superior title.

The trial court denied plaintiff's motion and instead granted summary disposition in favor of defendants, awarding them the property. The trial court, ruling from the bench, found that the 2002 quitclaim deed, ostensibly conveying ownership from KDC to plaintiff, did not give plaintiff any legal interest because KDC did not own the property. Referring to the after-acquired-title doctrine, the trial court further determined that the subsequent deed from the Keytons to KDC in March 2004 did not resurrect the 2002 deed after the fact because the 2002 deed was a quitclaim deed and not a warranty deed. Therefore, the April 2004 deed conveying ownership from KDC to defendants was valid and

---

[5] Plaintiff contends that he agreed to the dismissal of James Keyton because it was learned that the Keytons had conveyed the property to KDC pursuant to the quitclaim deed of March 1, 2004.

enforceable, and there was no effective deed conveying the property to plaintiff. Furthermore, the trial court ruled that, with respect to the earlier litigation by plaintiff against KDC and the Keytons, the default judgment only determined plaintiff's interest in the property as against KDC and not the Tibaldis, who were not named as defendants in the action. Thus, pursuant to MCR 3.411(H), defendants' interest was not adjudicated or subject to divestment, and it could be litigated and determined in this action.[6] According to the trial court, the fact that defendants acquired their interest in the property *before* the previous suit was filed afforded them an opportunity to litigate the issue here consistent with MCR 3.411(H) and the law regarding notices of lis pendens. The court, as a matter of law, quieted title in favor of defendants, finding that plaintiff held no interest.

Plaintiff appeals as of right.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). Equitable rulings to quiet title, as well as questions of law in general, including interpretation of a court rule, are likewise reviewed de novo on appeal. *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 612; 684 NW2d 800 (2004); *Marketos v American Employers Ins Co*, 465 Mich 407, 412; 633 NW2d 371 (2001); *Wengel v Wengel*, 270 Mich App 86, 91; 714

---

[6] The court noted that the default judgment was not a "conveyance" but merely an announcement of the ownership status that existed at the time vis-à-vis plaintiff and KDC.

NW2d 371 (2006); *Gorte v Dep't of Transportation*, 202 Mich App 161, 171; 507 NW2d 797 (1993).

MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. *Quinto v Cross & Peters Co,* 451 Mich 358, 362; 547 NW2d 314 (1996), citing MCR 2.116(G)(5). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). *Maiden v Rozwood,* 461 Mich 109, 121; 597 NW2d 817 (1999). "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

### B. ARGUMENTS, LAW, AND DISCUSSION

Plaintiff first argues that, on the basis of the previous lawsuit, the doctrine of res judicata bars any claim that defendants may have had regarding ownership of the property. Plaintiff maintains that defendants were privies of the Keytons and KDC because the property had been conveyed from the Keytons to KDC and then to defendants. Plaintiff notes that defendants held an unrecorded and undisclosed interest when plaintiff filed

the earlier suit and then recorded the interest while the action was pending, yet they did not intervene; therefore, the matter in dispute here could and should have been resolved in the earlier litigation and adjudication.[7]

Defendants' entire argument on appeal is essentially that (1) plaintiff never acquired the property pursuant to the 2002 deed because KDC did not own the property, (2) the recording of the deed was meaningless because, again, the deed was invalid, as KDC did not own the property, (3) plaintiff, despite the subsequent deed from the Keytons to KDC, cannot rely on the doctrine of after-acquired title because the 2002 deed was a quitclaim deed, not a warranty deed, (4) the prior litigation, which was filed after defendants acquired their interest, only determined plaintiff's interest in the property as compared to KDC and, consistently with MCR 3.411(H), did not affect defendants' interest where defendants were not named parties to the suit, and (5) the filing of the notice of lis pendens did not bar defendants' property claim because the notice was filed after defendants acquired their property interest.

In general, res judicata bars a subsequent action between the same parties when the facts or evidence essential to the action is identical to that essential to a prior action. *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001). The purposes of res judicata are to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication. *Pierson Sand & Gravel, Inc v*

___

[7] Plaintiff states that the "deed" from KDC to plaintiff in 2002 was quieted in favor of plaintiff by virtue of the default judgment; however, it was title to the property as between plaintiff and KDC that was quieted, not the deed. See MCR 3.411(D)(1). Because the Keytons were dismissed from the suit, and because KDC was defaulted, it cannot be said that the basis for quieting title in favor of plaintiff, as opposed to KDC, was a finding that the 2002 deed actually conveyed ownership to plaintiff.

*Keeler Brass Co,* 460 Mich 372, 380; 596 NW2d 153 (1999). Res judicata requires that (1) the prior action was decided on the merits, (2) the decree in the prior action was a final decision, (3) the matter contested in the second case was or could have been resolved in the first, and (4) both actions involved the same parties or their privies. *Baraga Co v State Tax Comm,* 466 Mich 264, 269; 645 NW2d 13 (2002); *Kosiel v Arrow Liquors Corp,* 446 Mich 374, 379-380; 521 NW2d 531 (1994); *Peterson Novelties, Inc v City of Berkley,* 259 Mich App 1, 10-11; 672 NW2d 351 (2003); *Ditmore v Michalik,* 244 Mich App 569, 576; 625 NW2d 462 (2001). The burden of establishing the applicability of res judicata is on the party asserting the doctrine. *Baraga Co, supra* at 269.

A default judgment is treated the same as a litigated judgment for purposes of res judicata and is considered a decision on the merits. *Staple v Staple,* 241 Mich App 562, 572; 616 NW2d 219 (2000); *Schwartz v City of Flint,* 187 Mich App 191, 194; 466 NW2d 357 (1991); *Detroit v Nortown Theatre, Inc,* 116 Mich App 386, 392; 323 NW2d 411 (1982). Here there can be no dispute that the default judgment entered against KDC in the previous action constituted a final decision on the merits, thereby satisfying the first two elements of res judicata. With respect to the third element, the matter contested in this action, i.e., whether plaintiff or defendants owned the property, was not resolved in the first action. The matter could have been resolved in the first suit had plaintiff added defendants as parties or had defendants intervened in the action. The recording of defendants' deed occurred in October 2004, during the pendency of the earlier litigation, and considering the notice of lis pendens and plaintiff's statement that his counsel discovered the deed from the Keytons to KDC before judgment while visiting the register of deeds office, by which time defendants' deed had also been

recorded, both parties appear to have had notice, actual or constructive,[8] such that either party could have taken steps to draw defendants into the litigation. Finally, with regard to the fourth element of res judicata, while defendants were not parties to the first action, they might be considered privies of KDC because KDC was a predecessor in title. See *Ditmore, supra* at 578 n 2 ("Plaintiffs were the privies of the Rozmarynowskis in the 1963 case because the Rozmarynowskis were plaintiffs' predecessors in title.").

Although there would appear to be some basis to apply the doctrine of res judicata on examination of the four elements generally necessary to invoke the doctrine, our res judicata analysis is affected by the controlling principles set forth in MCR 3.411, which is the court rule addressing civil actions to determine interests in land, or, in other words, quiet-title actions. Relevant here is MCR 3.411(H), which provides in pertinent part:

> The judgment determining a claim of title, equitable title, right to possession, or other interests in lands under this rule, determines only the rights and interests of the known and unknown persons who are parties to the action, and of persons claiming through those parties by title accruing after the commencement of the action.[9]

The principles governing statutory interpretation apply equally to the interpretation of the court rules. *Marketos, supra* at 413; *Yudashkin v Holden,* 247 Mich App 642, 649; 637 NW2d 257 (2001). If the plain and

---

[8] See *Kastle v Clemons,* 330 Mich 28, 31; 46 NW2d 450 (1951), for a discussion of actual and constructive notice.

[9] Additionally, MCL 600.2932(3) provides, in pertinent part, that if a plaintiff establishes title to lands in a quiet-title action, "the *defendant* shall be ordered to release to the plaintiff all claims thereto." (Emphasis added.)

ordinary meaning of the language is clear, then judicial construction is neither necessary nor permitted, and unless explicitly defined, every word or phrase should be accorded its plain and ordinary meaning, considering the context in which the words are used. *Id.* at 649-650.

In the case before us, defendants were not "parties to the [previous] action . . . ." MCR 3.411(H). Accordingly, that portion of MCR 3.411(H) referring to "parties" does not provide a basis to find the judgment in the prior action binding on defendants. The plain language of MCR 3.411 regarding "parties" does not contemplate persons who *could have* been made or become parties. MCR 3.411(H) does indicate, however, that the judgment also binds persons claiming through parties "by title accruing after the commencement of the action." Defendants claimed title by way of the deed from KDC, a party in the previous action, but the title claimed by defendants accrued *before* the commencement of the prior suit, since the quitclaim deed from KDC to defendants was executed on April 20, 2004, and the action was commenced on June 18, 2004.

We conclude that plaintiff's res judicata argument fails because, although it is arguable that the elements of res judicata in general are satisfied, application of MCR 3.411(H) does not allow for a conclusion that the prior judgment determined defendants' rights to the property where defendants were not parties in the earlier litigation and their asserted title did not accrue after commencement of that action.

Plaintiff presents some additional arguments that necessarily implicate and relate to res judicata principles and that require further reflection on MCR 3.411(H). Plaintiff, citing MCL 565.401, maintains that the trial court erred in rejecting the well-accepted rule

that a judgment, such as the one in the previous lawsuit, has the same effect as a deed when filed with the register of deeds. MCL 565.401 provides that when a judgment affecting or relating to title of real estate is entered and recorded with the register of deeds, "it shall have the same effect as evidence and notice of title as the recording of deeds and other conveyances . . . ." Plaintiff is apparently attempting to assert that the default judgment, in effect, constituted a deed to the property in favor of plaintiff that trumps all other claims. We reject this argument. Certainly, the default judgment reflects a determination regarding an interest in land that is controlling and that is *comparable* to the act of deeding property to a grantee, but, in light of MCR 3.411(H) and MCL 600.2932(3) ("the *defendant* shall be ordered to release . . .") (emphasis added), the determination only affects the rights of the parties involved in the suit or the rights of persons claiming through those parties by title accruing after the commencement of the action. This does not include defendants, as discussed earlier. MCL 565.401 does not alter this conclusion; rather, it merely provides a mechanism by which to give notice of judicial rulings affecting property interests through recordation of judgments similar to the notice that is provided when deeds are recorded. As astutely observed by the trial court, the quiet-title default judgment simply announced which parties involved in the litigation held title to the property.

Plaintiff also argues that he did not have a duty to include defendants in the first suit because they were unknown to him and they did not have a recorded interest when the suit was commenced. While we understand why plaintiff did not name defendants as parties when the suit was initiated, considering that there was no record notice of the deed to defendants,

plaintiff did not attempt to add defendants as parties when counsel discovered the deed from the Keytons to KDC at the register of deeds office before the conclusion of the litigation. We acknowledge that plaintiff's appellate brief does not concede that counsel also observed the deed from KDC to defendants while she was at the register of deeds office, which deed was recorded earlier than the deed conveying the property to KDC. It would appear that there was at least minimal constructive notice. Regardless, assuming that plaintiff did not have actual or constructive notice of defendants' deed, MCR 3.411(H) simply does not provide consideration for such circumstances short of defendants being actual parties or defendants actually acquiring title through a party after commencement of the action, neither of which occurred.[10] MCR 3.411(H) does not mandate intervention.

A further related argument focuses on the notice of lis pendens. Plaintiff maintains that, in light of the properly recorded lis pendens giving notice to all, when defendants recorded their deed after the quiet-title action was commenced and during the pendency of the litigation, which deed was executed before the complaint was filed, defendants became interested parties and were required to intervene in the suit to preserve their interests. According to plaintiff, given that the

---

[10] MCR 2.205(A) provides that "persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants in accordance with their respective interests." MCR 2.205(B) provides, "When persons described in subrule (A) have not been made parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action . . . ." Assuming that defendants were necessary parties because of their interest in the property pursuant to the deed from KDC, it does not change the fact that they were not made parties in the first action by plaintiff or the court. See the further discussion later in this opinion.

suit was in equity and that defendants had at least constructive notice of the litigation, defendants were not entitled to the property because they acted with unclean hands by not intervening in the previous quiet-title action.

MCL 600.2701(1) provides for the filing of a notice of lis pendens in order "[t]o render the filing of a complaint constructive notice to a purchaser of any real estate . . . ." "Generally, a lis pendens is designed to warn persons who deal with property while it is in litigation that they are charged with notice of the rights of their vendor's antagonist and take subject to the judgment rendered in the litigation." *Backowski v Solecki*, 112 Mich App 401, 412; 316 NW2d 434 (1982). A purchaser who acquires property after the commencement of a suit and the filing of a notice of lis pendens is bound by the proceedings because "[o]ne may not purchase any portion of the subject matter of litigation and thereby defeat the object of suit." *Provident Mut Life Ins Co v Vinton Co*, 282 Mich 84, 87; 275 NW 776 (1937). A lis pendens is effective from the time of filing and not before. See *Dassance v Nienhuis*, 57 Mich App 422, 432; 225 NW2d 789 (1975).

Here defendants acquired an interest *before* the first lawsuit and the notice of lis pendens were filed. Only the recording of defendants' deed occurred after the commencement of the suit. MCR 2.209, which addresses intervention, does not mandate that a party intervene in an action under certain circumstances. And MCR 2.205, while arguably indicating that defendants should have been deemed necessary parties for purposes of the earlier lawsuit, does not change the fact that defendants were not made parties. See footnote 10 of this opinion. Plaintiff cites no authority for the proposition that MCR 2.205 requires nonparties to

intervene on their own when they realize that they have an interest in the subject matter of litigation.

Given that quiet-title actions are equitable in nature, the question becomes whether defendants can and should be precluded from litigating title as if they were parties in the previous action under the doctrine of clean hands when the notice of lis pendens was of record when defendants recorded their deed, the litigation relative to the lis pendens had not yet been completed, and defendants failed to intervene. "The clean hands doctrine applies to quiet-title actions." *McFerren v B & B Investment Group*, 253 Mich App 517, 523; 655 NW2d 779 (2002). The maxim that a party who comes into equity must come with clean hands is an elementary and fundamental concept of equity jurisprudence. *Rose v Nat'l Auction Group*, 466 Mich 453, 462; 646 NW2d 455 (2002). The clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith relative to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant. *McFerren, supra* at 522-523. If there are indications of unfairness or over-reaching on an equity plaintiff's part, the court will refuse to grant him or her equitable relief. *Rose, supra* at 462.

Here there is a lack of evidence suggesting that defendants had actual notice of the first lawsuit, although there was constructive notice because of the lis pendens and the fact that defendants recorded their deed after the lis pendens had been filed. Under these circumstances, we are not prepared to say that defendants acted with unclean hands by failing to intervene in the earlier lawsuit such that they were not entitled to seek equity by having title quieted in their favor in the present action. The failure to intervene does not reflect bad faith or unfairness. Assuming that defendants actually knew about the litigation, they did not reap any

benefit by not becoming involved in the action; it simply delayed matters that ultimately needed to be decided. In fact, the failure to intervene continued a cloud over any title that defendants acquired. Had defendants become engaged in the first action, the same legal analysis needed to be undertaken to determine which party had superior title. Under the facts presented, we shall not permit plaintiff to use the doctrine of clean hands to circumvent MCR 3.411(H) or to push defendants out of the courtroom on principles reminiscent of res judicata.[11]

Outside the context of res judicata and MCR 3.411(H), we must next examine whether the trial court erred in ruling that defendants' title was superior to any interest claimed by plaintiff.

Plaintiff, citing MCL 565.29, argues that title properly vested in him and not defendants because the property was conveyed to and the deed was recorded by plaintiff before defendants' acquisition of a quitclaim deed for the property and defendants were not bona fide purchasers.

MCL 565.29 provides:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

---

[11] Considering equity in general, the record suggests that neither plaintiff nor defendants were engaged in any wrongdoing; rather, they were the victims of James Keyton. Unfortunately, one of the parties has to lose the battle over the single parcel of land.

Under MCL 565.29, the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers. *Graves v American Acceptance Mortgage Corp*, 246 Mich App 1, 5; 630 NW2d 383 (2001), rev'd on other grounds 469 Mich 608 (2004). "Michigan is a race-notice state, and owners of interests in land can protect their interests by properly recording those interests." *Lakeside Assoc v Toski Sands*, 131 Mich App 292, 298; 346 NW2d 92 (1983) (citation omitted).

If one were to assume that the 2002 quitclaim deed from KDC to plaintiff was valid, and considering that the deed was recorded in February 2004, before defendants' deed was executed and recorded in April and October 2004, respectively, plaintiff would clearly have superior title under Michigan law. Moreover, assuming that defendants were the first to validly record a deed, they cannot be deemed bona fide purchasers. Examining the issue of good faith under MCL 565.29, this Court held that "[a] good-faith purchaser is one who purchases without notice of a defect in the vendor's title." *Michigan Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992). "Notice" in the context of real estate law can be actual or constructive and has been defined by our Supreme Court as follows:

> When a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed. [*Kastle v Clemons*, 330 Mich 28, 31; 46 NW2d 450 (1951).]

Regarding actual notice, a party who knows at the time a deed is received that the grantor lacks title to the property being conveyed or has notice that the grantor

may not have title cannot be a bona fide purchaser. 1 Cameron, Michigan Real Property Law (3d ed), § 11.23, p 397. With respect to constructive notice, it "is notice that is imputed to a person concerning all matters properly of record, whether there is actual knowledge of such matters or not." *Id.*, § 11.24, p 399.

When defendants received their deed in April 2004, there existed, on record at the register of deeds office, a quitclaim deed showing a conveyance of the property from KDC to plaintiff in 2002, while defendants' deed reflected a conveyance of the same property from KDC to them. There was no deed on record showing that plaintiff had conveyed the property back to KDC, nor any deed showing that plaintiff had conveyed the property to the Keytons. Ordinary caution would have dictated the need to make further inquiries concerning plaintiff's possible rights in the property.[12]

However, the issue that is problematic, as recognized by the trial court, concerns the validity of the 2002 quitclaim deed ostensibly conveying ownership from KDC to plaintiff. "It is clear beyond dispute that the grantee from a party conveying by quitclaim deed acquires the right and title which his grantor had and no other." *Brownell Realty, Inc v Kelly*, 103 Mich App 690, 695; 303 NW2d 871 (1981), citing both *Roddy v Roddy*, 342 Mich 66; 68 NW2d 762 (1955), and *Doelle v Read*, 329 Mich 655; 46 NW2d 422 (1951). Here there is no dispute that KDC did not have title to the property when the 2002 quitclaim deed was executed; therefore, plaintiff acquired no rights or title relative to the property.

---

[12] Again, this assessment is made on the basis of constructive notice. There is no evidence that defendants were actually aware of plaintiff's deed when the property was deeded to defendants.

Plaintiff vaguely contends that any defect in the 2002 conveyance was cured on March 1, 2004, when the Keytons conveyed the property to KDC, resulting in plaintiff's ownership before the property was conveyed to defendants in April 2004. Although plaintiff does not specifically refer to the doctrine of after-acquired title, defendants address the doctrine, as did the trial court.

> Under the doctrine of after-acquired title, if a grantor by warranty deed conveys an estate that the grantor does not own and subsequently acquires title to that estate, that title inures to the benefit of his or her grantee. This is a form of estoppel, and the grantor is estopped to deny the title the grantor subsequently acquired. *Donohue v Vosper*, 189 Mich 78, 155 NW 407 (1915); *Ernst v Ernst*, 178 Mich 100, 144 NW 513 (1913); *Pendill v Marquette County* [*Agricultural Society*], 95 Mich 491, 55 NW 384 (1893). . . . However, a quitclaim deed can never operate to convey an after-acquired title, since a grantor in the quitclaim deed warrants no title and conveys only that which he or she owns at the time of the conveyance. *Olmstead v Tracy*, 145 Mich 299, 108 NW 649 (1906); *Gadsby v Monroe*, 115 Mich 282, 73 NW 367 (1897); *People v Miller*, 79 Mich 93, 44 NW 172 (1889). [1 Cameron, Michigan Real Property Law (3d ed), § 10.24, p 366.]

Defendants rely on the proposition that the doctrine of after-acquired title does not apply to quitclaim deeds, thereby negating plaintiff's argument. Aside from the Supreme Court cases cited in the quotation from Michigan Real Property Law, our Supreme Court has also stated, " 'So, where the deed imports to convey a fee, *though it lack a covenant of warranty*, the doctrine of estoppel permits the grantee to have the benefit of such titles as the grantor may subsequently acquire.' " *Klever v Klever*, 333 Mich 179, 192; 52 NW2d 653 (1952), quoting *Pendill, supra* at 493 (emphasis added). There thus appears to be conflicting case law regarding whether the doctrine of after-acquired title applies to

failed quitclaim deeds. We conclude that the controlling law is found in *Olmstead, Gadsby*, and *Miller,* which all directly addressed quitclaim deeds and which ruled that a quitclaim deed cannot operate to convey an after-acquired title. We also heed our Supreme Court's decision in *Fisher v Hallock*, 50 Mich 463, 465; 15 NW 552 (1883), in which Justice COOLEY stated, "The principle of estoppel might give to the grantee in a warranty deed the benefit of an after-acquired title in the grantor though he was a stranger to the title at the time the conveyance was made; but, as the defendant contends, a mere quitclaim could not have that effect." See also *Frost v Missionary Society of the Methodist Episcopal Church*, 56 Mich 62, 69; 22 NW 189 (1885) ("But a quitclaim deed can never inure to convey any subsequently acquired title which was not actually owned in equity at the time of the deed."). While *Klever* might arguably suggest a different conclusion, the language and facts of the case did not specifically address quitclaim deeds. *Klever* involved a reconciliation agreement. And in *Pendill, supra* at 494, the case cited by the *Klever* Court as supporting authority, the Supreme Court refused to apply estoppel principles when the deed at issue did not contain any express or implicit statement that the grantors were seised of a title in fee, or, stated otherwise, that the grantors warranted title. Thus, *Pendill* supports our position that quitclaim deeds can never operate to convey an after-acquired title. Accordingly, the trial court correctly quieted title in favor of defendants because defendants acquired sound title and plaintiff never acquired an interest in the property.[13]

---

[13] Assuming for the sake of argument that plaintiff acquired a relevant interest in the property pursuant to the default judgment in May 2005, as argued by plaintiff and for purposes of resolving the current dispute, the interest was acquired after defendants obtained their quitclaim deed and after they recorded the deed. Therefore, defendants would still have superior title. We again note that the default judgment resulted in KDC

Affirmed.

releasing to plaintiff all claims to the property, but defendants did not release any claim. See MCL 600.2932(3).