# STATE OF MICHIGAN

# COURT OF APPEALS

---

TEDDY 23, LLC and MICHIGAN TAX CREDIT
FINANCE, LLC d/b/a MICHIGAN
PRODUCTION CAPITAL,

      Plaintiffs-Appellants,

v

MICHIGAN FILM OFFICE and DEPARTMENT
OF TREASURY,

      Defendants-Appellees.

FOR PUBLICATION
December 15, 2015
9:00 a.m.

No. 323299
Ingham Circuit Court
LC No. 14-000702-AA

---

TEDDY 23, LLC and MICHIGAN TAX CREDIT
FINANCE, LLC d/b/a MICHIGAN
PRODUCTION CAPITAL,

      Plaintiffs-Appellants,

v

MICHIGAN FILM OFFICE and DEPARTMENT
OF TREASURY,

      Defendants-Appellees.

No. 323424
Court of Claims
LC No. 14-000039-MT

---

Before: GADOLA, P.J., and K. F. KELLY and FORT HOOD, JJ.

GADOLA, P.J.

In these consolidated appeals, plaintiffs appeal the order of the Court of Claims granting defendants' motion for summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) and the order of the Ingham Circuit Court denying their delayed application for leave to appeal. Both cases arise from plaintiffs' attempt to appeal the decision of the Michigan

-1-

Film Office (MFO),[1] denying Teddy 23, LLC (Teddy 23) a postproduction certificate of completion that would have enabled it to receive a tax credit from the Michigan Department of Treasury (the Department). Plaintiffs first filed a complaint challenging the MFO's decision in the Court of Claims. After defendants moved for summary disposition in the Court of Claims, plaintiffs filed a delayed application for leave to appeal in the Ingham Circuit Court. The Court of Claims concluded that it lacked subject-matter jurisdiction over plaintiffs' claims, and the circuit court rejected plaintiffs' delayed application for leave to appeal. We affirm with respect to both decisions.

## I. FACTUAL BACKGROUND

The MFO is an entity within the Michigan Strategic Fund (MSF). MCL 125.2029a(1). At the time the Court of Claims and the Ingham Circuit Court issued their decisions, the MSF was "a public body corporate and politic" located within the Department, but its "powers, duties, and functions" were to be exercised independently from the Department.[2] MCL 125.2005. MCL 208.1455(1) provides that the MFO, "with the concurrence of the state treasurer, may enter into an agreement with an eligible production company" to allow such a company to receive a tax credit provided certain requirements are met.[3] These requirements include entering into an agreement under MCL 208.1455(3), and obtaining a "postproduction certificate of completion" from the MFO under MCL 208.1455(5). The MFO will only issue a postproduction certificate of completion if it determines that the eligible production company complied with the terms of the agreement. MCL 208.1455(5). If an eligible production company receives a postproduction certificate of completion, it must submit the certificate to the Department, which will issue the applicable tax credit. MCL 208.1455(8).

Teddy 23 is a production company that obtained preliminary approval for a tax credit in connection with the production of a movie titled "Scar 23." Teddy 23 used the expected tax credit as security to obtain a loan from Michigan Tax Credit Finance, LLC. Teddy 23 ceased production of the film in April 2011, and submitted a request to the MFO for a postproduction

---

[1] The Michigan Film Office is now known as the Michigan Film & Digital Media Office. Michigan Film & Digital Media Office, *Michigan Film Office 2015 Fourth Quarter Report* <http://www.michiganfilmoffice.org/The-Film-Office/Publications/Default.aspx> [click "2015 4th Quarter Report"] (accessed December 1, 2015).

[2] On December 18, 2014, the Governor signed Executive Order No. 2014-12, which transferred the Michigan Strategic Fund from the Department of Treasury to the Department of Talent and Economic Development.

[3] Recently, the Legislature enacted 2015 PA 117, effective July 10, 2015, which provides that "[b]eginning on the effective date of the amendatory act that added this sentence, the Michigan film office and the fund shall not provide funding under a new agreement, or increase funding through an amendment to an existing agreement, for direct production expenditures, Michigan personnel expenditures, crew personnel expenditures, or qualified personnel expenditures under this section." MCL 125.2029h(1).

certificate of completion. Teddy 23 also submitted an independent auditor's report, which concluded that with the exception of a $196,843 overstatement of qualified expenditures, Teddy 23 had fairly represented its Michigan expenditures. Department employee Sara Clark Pierson reviewed Teddy 23's expenditures and concluded that "the production company and its principals acted in concert to substantially misstate expenditures." Pierson further reported that "[t]he misstatements affected almost every area of the production and were on a scale that was so large and pervasive that we can only conclude that it was intentional." Thereafter, the MFO denied Teddy 23's request for a postproduction certificate of completion.

The accounting firm Plante Moran reviewed the report and concluded that defendants' determinations were based on "erroneous assumptions and incomplete analyses." Nonetheless, the MFO reiterated its denial of the postproduction certificate of completion in letters dated October 14, 2013, and December 11, 2013. The December 11, 2013 letter stated that "any rights of appeal begin as of December 11, 2013, the date of this notice." Pierson sent an e-mail to plaintiffs' counsel on January 14, 2014, stating that the MFO had extended the appeal period by issuing the December 11, 2013 letter, and that "based on [her] informal count of the 60 day period," the appeal period was set to expire on February 10, 2014. Pierson later explained in an affidavit that her reference to the "60 day period" was in response to a conversation that she had with plaintiffs' counsel, who suggested that he had 60 days to file an appeal. She asserted that at no time did she advise plaintiffs regarding issues of jurisdiction or appeals periods.

On February 10, 2014, plaintiffs filed an action against both the MFO and the Department in the Court of Claims. Six weeks after defendants filed motions in the Court of Claims to dismiss plaintiffs' case for lack of subject-matter jurisdiction, plaintiffs filed a delayed application for leave to appeal in the Ingham Circuit Court, arguing that they were improperly denied a postproduction certificate of completion and that they did not file a circuit court action sooner because defendants induced them to believe that the Court of Claims had jurisdiction to review the MFO's decision. On June 17, 2014, the circuit court entered an order denying plaintiffs' delayed application for leave to appeal.

Thereafter, the Court of Claims entered an order granting defendants' motions for summary disposition under MCR 2.116(C)(4). The Court of Claims concluded that because Teddy 23 did not obtain a postproduction certificate of completion, it could not have made a valid request to the Department for a tax credit; therefore, the decision that aggrieved plaintiffs was the MFO's denial of the postproduction certificate of completion. The Court of Claims concluded that the Department made no "assessment, decision, or order," which was required to vest the Court of Claims with subject-matter jurisdiction under the Revenue Act, MCL 205.1 *et seq.* The Court of Claims further noted that the Court of Claims Act, MCL 600.6401 *et seq.*, explicitly states that the Court of Claims has no jurisdiction to review an administrative agency's decision. Finally, the Court of Claims determined that plaintiffs' remaining claims involving fraud, equal protection, and due process would require it to review the process by which the MFO denied the postproduction certificate of completion, and would thus be an administrative agency review within the exclusive jurisdiction of the circuit court.

## II. STANDARD OF REVIEW

"[W]e review jurisdictional questions under MCR 2.116(C)(4) de novo as questions of law." *Durcon Co v Detroit Edison Co*, 250 Mich App 553, 556; 655 NW2d 304 (2002). Questions of statutory interpretation are also reviewed de novo. *Bukowski v Detroit*, 478 Mich 268, 273; 732 NW2d 75 (2007). We review a circuit court's decision denying a delayed application for leave to appeal for an abuse of discretion. *People v Melotik*, 221 Mich App 190, 196; 561 NW2d 453 (2007). A trial court does not abuse its discretion unless it chooses an outcome outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

## III. ANALYSIS

## A. COURT OF CLAIMS DECISION

"Subject-matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of a case." *Harris v Vernier*, 242 Mich App 306, 319; 617 NW2d 764 (2000). The Michigan Constitution and the Legislature define the class of cases over which courts have subject-matter jurisdiction. *Id.* "Subject-matter jurisdiction is not subject to waiver because it concerns a court's 'abstract *power* to try a case . . . .' " *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 204; 631 NW2d 733 (2001), quoting *Campbell v St John Hosp*, 434 Mich 608, 613; 455 NW2d 695 (1990) (emphasis in *Travelers*). Nor can subject-matter jurisdiction be conferred by the consent of the parties. *In re AMB*, 248 Mich App 144, 166; 640 NW2d 262 (2001). "Subject-matter jurisdiction is so critical to a court's authority that a court has an independent obligation to take notice when it lacks such jurisdiction, even when the parties do not raise the issue." *Id.* at 166-167. Plaintiffs contend that the Court of Claims had jurisdiction to hear their case pursuant to the Revenue Act and the Court of Claims Act. Each will be examined in turn.

## 1. THE REVENUE ACT

The Revenue Act provides: "A taxpayer aggrieved by an assessment, decision, or order of the department may appeal the contested portion of the assessment, decision, or order to the tax tribunal within 35 days, or to the court of claims within 90 days after the assessment, decision, or order." MCL 205.22(1). The Revenue Act defines "department" to mean "the department of treasury." MCL 205.1(3)(a). "[W]hen a statute specifically defines a given term, that definition alone controls." *Tryc v Mich Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996).

Again, the MFO is an entity within the Michigan Strategic Fund, which was within the Department. MCL 125.2005 and MCL 125.2029a(1). Throughout MCL 208.1455, the terms "office" and "department" are referred to separately, indicating that although the MFO was within the Department, the two are separate entities. This understanding is consistent with the distinct and separate responsibilities assigned to the MFO and the Department when it comes to film tax credits. Specifically, the MFO is responsible for determining whether "an eligible production company has complied with the terms of an agreement" entered under

-4-

MCL 208.1455, such that it can issue a postproduction certificate of completion. MCL 208.1455(5). Once an eligible production company receives a postproduction certificate of completion, it must then submit the certificate to the Department, which issues the tax credit. MCL 208.1455(8).

In this case, the MFO, not the Department, issued the decision denying Teddy 23's request for a postproduction certificate of completion. Therefore, Teddy 23 did not receive an adverse "assessment, decision, or order" from the Department, and the Revenue Act did not confer subject-matter jurisdiction over plaintiffs' claims to the Court of Claims.

Plaintiffs make much of the fact that the MFO was housed within the Department at all times relevant to this appeal. However, plaintiffs' analysis ignores the nature of the relationship between the MSF, the MFO, and the Department. As previously noted, the MSF is a "body corporate and politic" that was to exercise its powers, duties, and functions independent of the Department. The MSF and the MFO were housed within the Department strictly for administrative purposes pursuant to the requirement that each agency of the executive branch of state government be allocated within not more than twenty principal departments. Const 1963, art 5, § 2. But as far as substantive decision making of the sort involved in this appeal was concerned, the MSF and, by extension, the MFO were legally required to operate independent of the Department. Indeed, the MSF and the MFO have since been allocated to another principal department of state government, illustrating the fact that the MFO is not and never was equivalent to the Department.

## 2. THE COURT OF CLAIMS ACT

The Court of Claims Act states that the Court of Claims has jurisdiction

> [t]o hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court. [MCL 600.6419(1)(a).]

However, § 6419 also states that "[t]his chapter does not deprive the circuit court of exclusive jurisdiction over appeals from the district court and administrative agencies as authorized by law." MCL 600.6419(5). Regarding administrative agency appeals, this Court has stated that "[a] litigant seeking judicial review of an administrative agency's decision has three potential avenues of relief: (1) the method of review prescribed by the statutes applicable to the particular agency; (2) the method of review prescribed by the [Administrative Procedures Act (APA), MCL 24.201 *et seq.*]; or (3) an appeal under MCL 600.631." *Jackson Community College v Mich Dep't of Treasury*, 241 Mich App 673, 678-679; 621 NW2d 707 (2000).

There is no specific statutory procedure for appealing a decision of the MFO denying a postproduction certificate of completion; therefore, plaintiffs' judicial appeal options were limited to the methods prescribed in the APA or under MCL 600.631. *Jackson Community College*, 241 Mich App at 678-679. The APA's procedure for judicial review of an agency's decision states that "a petition for review shall be filed in the circuit court for the county where

petitioner resides or has his or her principal place of business in this state, or in the circuit court for Ingham county." MCL 24.303. Additionally, the APA states that judicial review is available when a person "is aggrieved by a final decision or order in a contested case." MCL 24.301. The APA defines "contested case" as "a proceeding . . . in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing." MCL 24.203. In the present case, no evidentiary hearing was ever held, so an appeal under the APA was not available to plaintiffs. Moreover, even if such an appeal was available, plaintiffs were required to file their claim in the circuit court, not the Court of Claims. MCL 24.303. Likewise, MCL 600.631 states the following:

> An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, *to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county*, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court. [Emphasis added.]

Therefore, MCL 600.631 did not confer the Court of Claims with subject-matter jurisdiction over plaintiffs' appeal, and the Court of Claims did not err by dismissing plaintiffs' case.

## B. CIRCUIT COURT DECISION

Plaintiffs next argue that the circuit court abused its discretion by denying their delayed application for leave to appeal. MCR 7.105(G)(1) states the following:

> When an appeal of right or an application for leave was not timely filed, the appellant may file an application as prescribed under subrule (B) accompanied by a statement of facts explaining the delay. The answer may challenge the claimed reasons for the delay. The circuit court may consider the length of and the reasons for the delay in deciding whether to grant the application.

Plaintiffs' argument that the circuit court abused its discretion is based in large part on the contention that defendants misled them to believe that the Court of Claims had jurisdiction over their appeal. Plaintiffs first point to the Department's "Taxpayer Rights Handbook" to support their decision to file suit in the Court of Claims. The handbook states that "[t]axpayers have the right to appeal any final determination made by Treasury including a reduced or denied refund or credit" to the Michigan Tax Tribunal or the Court of Claims. Again, however, this case does not involve a decision by the Department, but rather by the MFO. Moreover, the handbook explicitly states that although its purpose is to "help taxpayers understand their rights and responsibilities[,] it does not take the place of the law." Plaintiffs also argue that Pierson misled them, but Pierson's reference to a 60-day appeal period could not reasonably have led plaintiffs to conclude that jurisdiction was proper in the Court of Claims because appeals from Department decisions in the Court of Claims have a 90-day appeal period. MCL 205.22(1). It is more likely that Pierson's mention of a 60-day appeal period referred to the 60 days provided for appeals to the circuit court under the APA, as opposed to the 90-day appeal period under the Court of Claims Act. See MCL 24.304(1).

Additionally, plaintiffs argue that they were diligent in filing an application for leave to appeal in the circuit court after learning that defendants did not believe the Court of Claims had subject-matter jurisdiction over their case. Plaintiffs' contention is weakened by the fact that they waited six weeks to file their application after defendants filed their motions for summary disposition in the Court of Claims. The circuit court could consider this delay when deciding whether to grant plaintiffs' application for leave to appeal. Further, although plaintiffs provided numerous copies of filings of film tax credit cases from the Court of Claims, nothing suggests that defendants provided these filings to plaintiffs, as opposed to plaintiffs having obtained them through their own research.

Plaintiffs also argue that the circuit court abused its discretion because it failed to exercise any discretion, which was evidenced by the fact that the court denied plaintiffs' delayed application for leave by simply checking a box on a form without further analysis. Although there is support for plaintiffs' contention that an abdication of discretion can be an abuse of discretion, *People v Stafford*, 434 Mich 125, 134; 450 NW2d 559 (1990), the circuit court's decision in this case was not the result of an abdication of discretion. Although the court did not provide any specific analysis with its denial, plaintiffs filed a motion for reconsideration, which the court stated it denied because it concluded that the motion merely presented the same issues already ruled on. This indicates that the circuit court was familiar with the issues in plaintiffs' delayed application, even if it did not explain its analysis on the denial form. Plaintiffs offer no evidence suggesting that the circuit court was unaware of or did not consider the issues involved; thus, plaintiffs have not shown that the circuit court's decision denying their delayed application for leave to appeal was the result of an abdication of discretion.

## C. EQUITABLE ESTOPPEL

Finally, plaintiffs argue that the doctrine of equitable estoppel applied because defendants repeatedly referenced a 60-day appeal period. Generally, the application of an equitable doctrine such as equitable estoppel is reviewed de novo. *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 582; 458 NW2d 659 (1990). However, because plaintiffs did not raise this issue below, we review it under the plain error rule. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (quotation marks and citation omitted).

"Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Soltis v First of America Bank-Muskegon*, 203 Mich App 435, 444; 513 NW2d 148 (1994). The Court of Claims did not err by granting defendants' motions for summary disposition under MCR 2.116(C)(4), because even if a valid equitable estoppel argument existed, subject-matter jurisdiction cannot be conferred by estoppel. *In re AMB*, 248 Mich App at 166. Neither did the possible application of the doctrine obligate the circuit court to grant plaintiffs' delayed application for leave to appeal. Rather, the circuit court had discretion to consider the length of and the reasons for plaintiffs' delay in deciding whether to grant the application. MCR 7.105(G). Therefore, even if equitable estoppel could be applied

in this case, this fact alone does not compel us to reverse the decisions of the Court of Claims and the circuit court.

Affirmed.


/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood