# STATE OF MICHIGAN

# COURT OF APPEALS

VAUGHN GUILD,

        Plaintiff-Appellant,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS,

        Defendant-Appellee.

UNPUBLISHED
May 16, 2017

No. 332574
Court of Claims
LC No. 15-000181-MK

Before: MARKEY, P.J., and MURPHY and METER, JJ.

PER CURIAM.

Plaintiff Vaughn Guild appeals as of right the court of claims (trial court) order granting summary disposition in favor of defendant Michigan Department of Corrections (MDOC). The trial court dismissed plaintiff's breach of contract action, concluding that it lacked jurisdiction because plaintiff had failed to exhaust administrative remedies available through and under the rules and regulations of the Civil Service Commission (CSC). We affirm.

## I. THE PRIOR LITIGATION AND APPEAL

In an earlier lawsuit, plaintiff, a psychologist, sued the MDOC for wrongful termination, alleging a variety of theories. The trial court had partially denied a motion for summary disposition filed by the MDOC in that case, but this Court reversed and remanded for entry of judgment in favor of the MDOC. *Guild v Dep't of Corrections*, unpublished opinion per curiam of the Court of Appeals, issued November 25, 2014 (Docket No. 317195). The following underlying facts were set forth by the previous panel in *Guild*:

> Plaintiff worked for [the MDOC] for approximately seven years. He was one of several psychologists at [the MDOC]'s Muskegon facility. Plaintiff worked with groups of approximately 13 sexual offenders and assaultive offenders. One of plaintiff's responsibilities was preparing a "therapy termination report" for each inmate in the group within five business days of the completion of the group therapy. The database had a security system that locked a report 24 hours after it was created. If a psychologist needed to add to a report after it was locked, he had to use a process for creating an addendum.

-1-

In 2008, plaintiff was not completing his reports on time. At his deposition, plaintiff contended that the deadlines were unrealistic. At any rate, [the MDOC] undertook disciplinary measures to attempt to get plaintiff into compliance with the job expectations. At some point, plaintiff's supervisors discovered that plaintiff was beginning or "opening" several reports at once and putting in only the "critical data." The reports would lock, and plaintiff would return to complete them later, sometimes weeks later, using the addendum process. He used the addendum process to complete the reports and sometimes to change his previous ratings in the reports as well. A witness testified that plaintiff's action of leaving incomplete reports in the system gave rise to a risk that the parole board would view them and make decisions based on them in an incomplete form that plaintiff would later change.

Plaintiff was terminated on January 21, 2009. Plaintiff filed a grievance regarding his termination and an arbitration hearing was held. Eventually, the parties reached a settlement and plaintiff was expected to return to work in August 2009. However, [the MDOC] then completed an ongoing investigation and concluded that plaintiff had been falsifying documents and, after a disciplinary hearing on August 28, 2009, it again terminated plaintiff's employment.

On February 2, 2012, plaintiff filed a four-count complaint alleging retaliatory discharge in violation of public policy, retaliatory discharge for the assertion of statutory rights, age discrimination[1] in violation of the Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, and discrimination on the basis of disability in violation of the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1201 *et seq.*[2]

[The MDOC] moved for summary disposition. [The MDOC] relied on MCR 2.116(C)(4) (lack of subject-matter jurisdiction), MCR 2.116(C)(7) (governmental immunity), and MCR 2.116(C)(10) (lack of genuine issue of material fact).

The trial court granted summary disposition with regard to plaintiff's counts I and II. With respect to counts III and IV [discrimination counts], the court denied summary disposition . . . .

This Court proceeded to hold that the MDOC was entitled to summary disposition under MCR 2.116(C)(10) on the age and disability discrimination counts, and it remanded the case for entry of judgment in favor of the MDOC. *Id.* at 4-5. The Michigan Supreme Court subsequently

---

[1] Plaintiff was 57 years old in 2008.

[2] Plaintiff alleged that he had a sleep disorder.

denied plaintiff's application for leave to appeal. *Guild v Dep't of Corrections*, 497 Mich 1029 (2015).

## II. THE INSTANT LITIGATION

On August 21, 2015, about nine months after this Court had issued its opinion in the first appeal, plaintiff filed his complaint for breach of contract in the instant action. The complaint recited numerous allegations concerning events that occurred during the time period leading up to the filing of the earlier wrongful termination action. The complaint contained a single count – breach of labor contract and settlement agreement. Plaintiff alleged that he "was an intended third party beneficiary" of (1) a collective bargaining agreement (CBA) between UAW Local 6000 and the state of Michigan, which covered the period of January 1, 2008, to December 31, 2010, (2) an MDOC policy directive, number 02.03.100,[3] which was made effective April 14, 2008, and (3) an August 20, 2009 settlement agreement negotiated on his behalf by the union.[4] Plaintiff further alleged that he had exhausted the grievance procedure outlined in the CBA. Additionally, plaintiff asserted that "[m]uch critical information relevant to this suit were only made available to [plaintiff] many years after his termination[, in 2012,] through an unrelated administrative license investigation that had been instigated by [the] Regional Director of Psychological Services[.]"[5] Plaintiff contended that he and the MDOC were bound by the CBA and the settlement agreement, that the terms of the settlement agreement provided that plaintiff's employment would be reinstated, and that plaintiff had performed his duty under the settlement agreement by returning to the job site and being prepared to work. Plaintiff also alleged that the CBA had required the MDOC to "conclude an investigation in a timely manner and that the employee be apprised within a reasonable time as to the outcome of the investigation." He claimed that he had always complied with investigator requests in a timely manner.

With respect to the 2009 settlement agreement, plaintiff alleged that the MDOC "substantially breached [its] duty to perform on the contract when he was not returned to work as the settlement agreement required." With respect to the CBA, plaintiff alleged that the MDOC "substantially breached [its] duty to perform under the [CBA] when [the] [w]arden . . . neither charged [plaintiff] with a rule violation as to 'falsifying clinical information' within a reasonable time nor, alternatively, informed him that the investigation had been concluded and that charges would not be filed against him."[6] Plaintiff maintained that he suffered damages as a result of the MDOC's breach of the CBA and settlement agreement.

---

[3] Plaintiff characterized the policy directive as an "extension" and part of the CBA.

[4] The 2009 settlement agreement was referenced above in the quoted passage from this Court's earlier opinion.

[5] This aspect of the case will be explored more thoroughly below.

[6] Plaintiff stated in the complaint that in late 2008 and early 2009, there had been an MDOC investigation regarding allegations that plaintiff had falsified clinical information, as well as another investigation into whether he had falsified time reports. Plaintiff further alleged in the complaint that the deputy warden had completed the investigation on January 22, 2009, with

The MDOC did not file an answer to the complaint; rather, it filed a motion for summary disposition under MCR 2.116(C)(4) ("court lacks jurisdiction of the subject matter"). In its supporting brief, the MDOC initially noted that plaintiff had failed to raise the breach of contract claim in the prior litigation, either at the trial or appellate stages, nor "did he ever seek to amend his complaint to address breach of contract or any alleged issues with his union representation, even after inquiries were made by the trial court about those very issues." The MDOC maintained that plaintiff was collaterally estopped from now raising the breach of contract claim "as a means of obtaining additional review of the exact same facts and issues decided [previously] in favor of [the MDOC]." However, the main thrust of the MDOC's argument was that plaintiff was a member of Michigan's classified civil service, that he failed to exhaust his administrative remedies by not processing a claim or grievance to final decision through and under the rules of the CSC, i.e., an appeal to the CSC of a rejected grievance that had been pursued after plaintiff was fired the second time, and that, therefore, the trial court lacked jurisdiction over the case. The MDOC additionally contended that issues concerning discipline and termination were covered by the CBA and handled by way of the settlement agreement, which the union entered into on plaintiff's behalf. Thus, plaintiff was not now entitled to seek enforcement of the CBA in an attempt to re-litigate the earlier case.

Plaintiff filed a brief in opposition to the MDOC's motion for summary disposition. We shall not, at this juncture, discuss in detail plaintiff's response, leaving that discussion for the analysis section of this opinion, but then only to the extent that plaintiff has raised a particular argument on appeal. In general, plaintiff's responsive position below was that exceptions to the doctrine of exhaustion of administrative remedies, including futility, were applicable under the circumstances of this case. The trial court issued a written opinion, concluding that it lacked subject-matter jurisdiction over the claim, thereby entitling the MDOC to summary disposition pursuant to MCR 2.116(C)(4). In reciting the history of the dispute between the parties, the trial court noted that plaintiff had been terminated on January 21, 2009, that, in response, he filed a grievance that eventually led to the August 2009 settlement agreement supposedly reinstating plaintiff, that, soon thereafter, he was again terminated on September 9, 2009, after an investigation revealed that plaintiff was falsifying clinical information,[7] that plaintiff had also

_____

respect to the falsification of clinical information, recommending that plaintiff be given an opportunity to present further evidence on the issue, but plaintiff had just been terminated (for the first time) on January 21, 2009, filing his grievance on January 26. According to plaintiff, he did not become aware of the deputy warden's investigation report until after August 20, 2009, around the time of the eventual settlement agreement. Plaintiff additionally alleged that MDOC officials sought to continue the investigation into the falsification of clinical information, notwithstanding the completion of the deputy warden's investigation, so as to be prepared should plaintiff win reinstatement through his grievance. It is the secretive manner in which the investigations were conducted, and the timing of actions or inaction related to the investigations, that formed the basis of plaintiff's assertion that the MDOC had breached the CBA, including the policy directive. Plaintiff claimed that the investigation regarding the falsification of time reports was closed in February 2009 "due to insufficient evidence."

[7] Plaintiff apparently never actually returned to active employment following the settlement agreement, with the MDOC moving swiftly to terminate his employment.

-4-

grieved this second termination, that an arbitrator denied the grievance on July 29, 2010, and that plaintiff then filed the initial lawsuit against the MDOC on February 2, 2012, which ultimately failed. The trial court agreed with the MDOC's exhaustion-of-remedies argument, concluding that plaintiff had failed to exhaust his administrative remedies by not appealing the July 2010 grievance denial to the CSC, that he had not shown that exhaustion of remedies would have been futile, that application of the exhaustion doctrine in this case would serve the purpose and policy behind the doctrine, and that, in light of these findings, the court lacked subject-matter jurisdiction over the complaint. The trial court did not mention the MDOC's cursory collateral estoppel argument. An order granting the MDOC summary disposition under MCR 2.116(C)(4) was entered on March 2, 2016.

Plaintiff filed a motion for reconsideration, and the trial court denied the motion, rejecting plaintiff's newly-raised argument that he had indeed exhausted his administrative remedies, where the arbitrator's decision was final and binding under the CBA, with no CSC appeal being available. The court ruled that the argument was not consistent with language in the CBA, which contemplated appeals to the CSC, and the court noted that the argument was contrary to plaintiff's earlier position which had implicitly accepted that he had failed to exhaust an appellate remedy with the CSC. The court also rejected a new argument that plaintiff was denied due process, which contention was based on the claim that the arbitrator's decision had not informed plaintiff of the timelines applicable to an appeal to the CSC. The court found that the CSC rules and regulations were sufficient to alert plaintiff of any appellate timelines.

III. ANALYSIS

A. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition, *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), as well as the question of a court's subject-matter jurisdiction under MCR 2.116(C)(4), *Teddy 23, LLC v Mich Film Office*, 313 Mich App 557, 564; 884 NW2d 799 (2015). We likewise review de novo the interpretation and legal effect of contractual language, such as that found in the CBA. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). This Court reviews for an abuse of discretion a trial court's ruling on a motion for reconsideration brought under MCR 2.119(F)(3). *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000).

B. SUBJECT-MATTER JURISDICTION AND MCR 2.116(C)(4)

"Summary disposition pursuant to MCR 2.116(C)(4), for lack of jurisdiction, is proper when a plaintiff has failed to exhaust its administrative remedies." *Rudolph Steiner Sch of Ann Arbor v Ann Arbor Charter Twp*, 237 Mich App 721, 730; 605 NW2d 18 (1999), citing *Blair v Checker Cab Co*, 219 Mich App 667, 671; 558 NW2d 439 (1996); see also *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 50; 620 NW2d 546 (2000) (when a plaintiff fails to exhaust administrative remedies, courts lack jurisdiction). With respect to subject-matter jurisdiction, this Court in *Teddy 23*, 313 Mich App at 564, explained:

Subject-matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular

facts of a case. The Michigan Constitution and the Legislature define the class of cases over which courts have subject-matter jurisdiction. Subject-matter jurisdiction is not subject to waiver because it concerns a court's abstract *power* to try a case. Nor can subject-matter jurisdiction be conferred by the consent of the parties. Subject-matter jurisdiction is so critical to a court's authority that a court has an independent obligation to take notice when it lacks such jurisdiction, even when the parties do not raise the issue. [Citations, quotation marks, and ellipsis omitted.]

In analyzing a motion under MCR 2.116(C)(4), this Court must determine whether the pleadings, affidavits, depositions, admissions, and documentary evidence demonstrate the existence, or absence, of subject-matter jurisdiction. *L & L Wine & Liquor Corp v Liquor Control Comm*, 274 Mich App 354, 356; 733 NW2d 107 (2007).

### C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

"The doctrine of exhaustion of administrative remedies requires that where an administrative agency provides a remedy, a party must seek such relief before petitioning the court." *Cummins v Robinson Twp*, 283 Mich App 677, 691; 770 NW2d 421 (2009) (citation omitted). Under the doctrine, courts have declined to act in contravention of administrative agencies when a remedy available through administrative channels has not been pursued to completion. *Citizens for Common Sense*, 243 Mich App at 52. In *Int'l Business Machines Corp v Dep't of Treasury*, 75 Mich App 604, 610; 255 NW2d 702 (1977), this Court observed:

Exhaustion of administrative remedies serves several policies: (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary.

Exhaustion of administrative remedies is not an inflexible condition precedent to judicial consideration, however, and will not be required if review of the agency's final decision would not provide an adequate remedy, i.e., if it would run counter to the policies which underlie the doctrine. [Citations omitted; see also *L & L Wine*, 274 Mich App at 362; *Citizens for Common Sense*, 243 Mich App at 52-53.]

A judicially created exception to the exhaustion requirement arises when an appeal to the administrative agency would be futile. *L & L Wine*, 274 Mich App at 358. To invoke this exception, it must be clear that an appeal within the agency would be an exercise in futility and nothing more than a formal step on the way to the courthouse. *Id*. And we will not presume futility. *Id*. Indeed, courts must initially assume that the administrative process will properly correct alleged errors. *Id*.

D. THE CSC

In *Bonneville v Mich Corrections Org, Serv Employees Int'l Union, Local 526M, AFL-CIO*, 190 Mich App 473, 475-476; 476 NW2d 411 (1991), this Court discussed the nature of the CSC, as well as exhaustion of administrative remedies, stating:

> Plaintiffs, as employees of the Department of Corrections, are members of the state classified civil service. As such, the terms and conditions of plaintiffs' employment are regulated by the Civil Service Commission, which has plenary and absolute authority in that respect, Const 1963, art 11, § 5. The commission determines the procedures by which a grievance is reviewed.

> The commission has set up . . . [p]olicy that establishes a system of collective bargaining for civil service employees. Under that policy, the union chosen as the exclusive bargaining representative has a duty of fair representation. . . . In addition, the commission has established an administrative procedure for the processing of complaints of unfair labor practice. . . . .

> It is well established that where an administrative grievance procedure is provided, exhaustion of that remedy, except where excused, is necessary before review by the courts. A court may review nonfinal agency actions only if a final agency decision or order would not provide the complainant with an adequate remedy. [Citations omitted.][8]

Keeping in mind the background principles and law discussed above with respect to the standards of review, MCR 2.116(C)(4), subject-matter jurisdiction, the doctrine of exhaustion of administrative remedies, and the CSC, we shall now proceed to discuss, analyze, and resolve the issues and arguments raised on appeal.

E. DISCUSSION

Plaintiff first contends that the trial court abused its discretion by denying the motion for reconsideration, given that the CBA operated to expressly replace CSC rules and regulations. Plaintiff maintains that under the CBA, the July 2010 denial of his grievance was final and

---

[8] In *Womack-Scott v Dep't of Corrections*, 246 Mich App 70, 79; 630 NW2d 650 (2001), this Court discussed the CSC and challenges to a CSC decision:

> The CSC is an administrative agency that exists pursuant to the constitution. The CSC regulates the terms and conditions of employment in the classified service and has plenary and absolute authority in that respect. The APA [Administrative Procedures Act, MCL 24.201 *et seq.*,] provides the means to seek review of a CSC decision. If a party desires to challenge an adverse CSC decision or ruling, the review process involves a direct appeal to the circuit court. [Citations omitted.]

binding and that there was no further available remedy by way of an appeal to or through the CSC. Plaintiff asserts that a collective bargaining agreement can supplant standard CSC rules and regulations, including those pertaining to a CSC appeal, and that the CBA did just that in this case. Thus, according to plaintiff, he had in fact exhausted his administrative remedies by filing the grievance and obtaining a ruling on the grievance by an arbitrator in July of 2010.

We initially note that plaintiff first raised this argument in his motion for reconsideration; therefore, it has not been properly preserved for appellate review. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Moreover, we also reject plaintiff's argument on a substantive level.

First, it is not disputed that the CSC rules and regulations generally provide for an appeal of a grievance decision to adjudicating officers associated with the CSC and then to the CSC itself. See Civ Serv Rs 8-2 and 8-7. Article 8, § B(6), of the CBA provides, in part, as follows:

> The decision of the Arbitrator will be final and binding on all parties to this Agreement, except as may be otherwise provided in the Civil Service Rules and Regulations. Arbitration decisions shall not be appealed to the Civil Service Commission, except as may be provided by the Civil Service Rules and Regulations. . . . .

The trial court relied on this CBA provision in denying plaintiff's motion for reconsideration, finding that a CSC appeal of the July 2010 grievance ruling had been available to plaintiff under CBA, art 8, § B(6), when considered in conjunction with the CSC rules and regulations providing for such appeals. This is a sound construction of the CBA provision. Plaintiff argues, however, that the trial court failed to consider CBA, art 8, § E, which provides in full:

> The grievance procedure *set out above* shall be exclusive and shall replace any other grievance procedure for adjustment of any disputes permitted under Civil Service Rules and Regulations. The grievance procedure set out above shall not be used for the adjustment of any dispute for which the Civil Service Rules and Regulations require the exclusive use of a Civil Service forum or procedure. [Emphasis added.]

Assuming for the sake of argument the validity of plaintiff's proposition that a collective bargaining agreement can eliminate the right to or opportunity of a CSC appeal, CBA, art 8, § E, absolutely does not accomplish such a feat. Article 8, § B(6), is part of the "grievance procedure set out above," as referenced in art 8, § E. Accordingly, CBA, art 8, § E, simply reinforces CBA, art 8, § B(6), which, as indicated above, plainly contemplates a CSC appeal under CSC rule and regulations. Contrary to plaintiff's position, CBA, art 8, § E, does not eliminate CSC appeals, and such an interpretation would render § B(6) nugatory and meaningless. Plaintiff mistakenly construes § E as essentially rendering all CSC rules and regulations completely inapplicable, with the CBA controlling in all aspects of a grievance dispute. Section E, once again, merely reinforces the validity of § B(6), which provides for a CSC appeal as allowed under CSC rule and regulations. Plaintiff's alternative argument that, minimally, an ambiguity exists as to the interplay between §§ B(6) and E and that the ambiguity should be resolved in his favor and

against the MDOC is likewise rejected; there is no ambiguity. Reversal in regard to this issue is wholly unwarranted.

In an accompanying argument based on CBA, art 8, § E, plaintiff, in cursory fashion, next appears to contend that due process is offended by applying the exhaustion doctrine, considering that the CBA was ambiguous concerning the need or ability to file a CSC appeal, leaving plaintiff without adequate notice that he had to exhaust his administrative remedies through a CSC appeal. Again, the CBA very clearly contemplates and allows for a CSC appeal from a grievance decision; therefore, plaintiff had adequate notice for due process purposes. See *Jones v Flowers*, 547 US 220, 234; 126 S Ct 1708; 164 L Ed 2d 415 (2006) ("due process requires the government to provide adequate notice").

Next, plaintiff argues that, accepting that he had not exhausted his administrative remedies, none of the policy reasons for imposing the exhaustion requirement were implicated in this case and thus exhaustion should not have been mandated. Plaintiff also argues that pursuing a CSC appeal would have been futile, considering the extent of the alleged contractual breach that amounted to repudiation of the settlement agreement, and given that the absence of certain e-mails, not discovered until 2012, would have resulted in an improper and inaccurate framing of the parties' contractual relationship, such that review by the CSC in 2010 would not have yielded an adequate remedy.

Plaintiff maintains that in 2012 his prior counsel unearthed critical information through a discovery request in an administrative license investigation instituted by an MDOC director of psychological services. The information was contained in a series of e-mails between various MDOC officials concerning plaintiff's employment. In an e-mail sent shortly before the August 2009 settlement was reached on plaintiff's pending grievance following his initial termination in January 2009, an MDOC official indicated that a settlement offer was going to be made because plaintiff had stronger evidence and there was an "employee liberal arbitrator[.]" The e-mail further indicated that if plaintiff accepted the settlement offer, the following should occur:

> [W]e are to proceed promptly with the pending investigation that will have the charges we determine that will at least include falsification of records which they are still indicating is a dismissable offense. They want us to charge him and notify him regarding the scheduled discipline conference. They are indicating that that will also include suspending him with a stop work order per the policy so he won't actually be returning to work. We need to be prepared to move fast after they contact us on the 19th [day before settlement agreement was executed].

This e-mail and similar ones are characterized by plaintiff as showing collusion between MDOC officials, revealing a concerted effort to undermine the 2009 settlement agreement and reflecting the MDOC's intent or plan not to actually allow plaintiff to return to work under the settlement, despite language in the settlement contemplating plaintiff's return, but to instead finalize an apparently ongoing investigation that would provide a basis to once again terminate plaintiff's employment. Plaintiff argues that because he only discovered the e-mails in 2012, which was well past the period to file a CSC appeal from the denial of his second grievance in July 2010, he should be excused for not having exhausted his administrative remedies, i.e., for not having pursued a CSC appeal of the grievance denial, given that the policy considerations

behind the exhaustion requirement were not implicated under the circumstances. Plaintiff indicates that the true dimensions of what actually transpired in 2009, relative to a cause of action for breach of contract, could not be appreciated absent consideration of the e-mails discovered years later, thereby making any CSC appeal futile at the time.

We fail to understand the logic of plaintiff's argument in the context of the exhaustion doctrine. Although plaintiff may not have known about the e-mails and alleged collusion until 2012, he certainly knew in 2009 that the settlement agreement was not fully carried out, as he never did return to work, and that the MDOC had terminated him on the basis of an investigation that showed the falsification of clinical records.[9] The absence of the information contained in the e-mails did not provide a roadblock to a potentially successful CSC appeal, nor excuse an effort to pursue a CSC appeal in the first instance. And as aptly noted by the trial court, had plaintiff pursued a CSC appeal, he may very well have discovered the e-mail information at that time. Further, the motivations, intent, and maneuvers of MDOC officials, as reflected in the e-mails and even if deemed troubling, ultimately had no real bearing on whether plaintiff was properly terminated for falsifying clinical information; the relevant issue was whether he did so or not. A CSC appeal by plaintiff would not have run counter to the policies underlying the exhaustion doctrine, see *Int'l Business Machines*, 75 Mich App at 610, and an adequate remedy was available to plaintiff through a CSC appeal. Moreover, under the circumstances, we cannot find that a CSC appeal would have been futile or nothing more than a formal step to the courthouse, especially given the assumption that the administrative process would have corrected any alleged errors. *L & L Wine*, 274 Mich App at 358.

On a final note, we cannot help but remark that, assuming plaintiff could file an original action for breach of contract in the court of claims,[10] res judicata would clearly bar such a lawsuit against the MDOC. "The purposes of res judicata are to relieve parties of the cost and vexation

---

[9] As mentioned earlier in this opinion, the breach of contract action concerned plaintiff's claim that the settlement agreement was breached by the MDOC's failure to return him to his job and that the CBA was breached by the manner in which the MDOC conducted its investigations of plaintiff.

[10] Typically, an appeal of an employment decision on a grievance is pursued through the CSC, followed by an appeal to the circuit court, not an original action. The panel in *Womack-Scott*, 246 Mich App at 80, explained:

> Considering the function that the CSC serves to resolve employment disputes of state employees and the availability of a direct appeal to the circuit court from a CSC decision, we hold that a party aggrieved by a ruling of the CSC cannot file an independent action to seek redress of the claims made during the administrative process, but rather must pursue those claims through a direct appeal to the circuit court pursuant to the APA. See MCR 7.104(C).

Plaintiff's lawsuit essentially not only circumvents the CSC appeals process, it undermines the procedural mechanism to bring a dispute in front of a trial or circuit court, i.e., an appeal.

of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication." *Richards v Tibaldi*, 272 Mich App 522, 530-531; 726 NW2d 770 (2006) (citation omitted). "In general, res judicata bars a subsequent action . . . when the facts or evidence essential to the action is identical to that essential to a prior action." *Id.* at 530 (citation omitted). "Res judicata requires that (1) the prior action was decided on the merits, (2) the decree in the prior action was a final decision, (3) the matter contested in the second case was or *could have been resolved* in the first, and (4) both actions involved the same parties or their privies." *Id.* at 531 (emphasis added). The alleged breach of the CBA and settlement agreement occurred before the first lawsuit was even filed and could and should have been pursued and resolved at that time. And even if we assume that a breach of contract action was not discoverable until 2012, considering the e-mails, the earlier litigation was ongoing in 2012. Reversal is unwarranted.

Affirmed. Having fully prevailed on appeal, the MDOC is awarded taxable costs under MCR 7.219.


/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Patrick M. Meter